```
 1                     UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2

 3     AYMEN BATARFI, et al,              .
                                          .
 4             Plaintiffs,                .
                                          .  CR No. 05-409
 5        v.                              .
                                          .
 6     GEORGE BUSH, et al,                .  Washington, D.C.
                                          .  Wednesday, April 1, 2009
 7             Defendants.                .  12:20 p.m.
                                          .
 8     . . . . . . . . . . . . . . .      .

 9                    TRANSCRIPT OF STATUS HEARING
                  BEFORE THE HONORABLE EMMET G. SULLIVAN
10                    UNITED STATES DISTRICT JUDGE

11     APPEARANCES:

12

13     For the Plaintiff:        JOHN CONNOLLY, ESQ.
                                 WILLIAM MURPHY, ESQ.
                                 Murphy & Shaffer LLC
14                               Suite 1400
                                 36 South Charles Street
15                               Baltimore, Maryland  21201-3109
                                 410-783-7000
16

17     For the Government:       ANDREW WARDEN, ESQ.
                                 SEAN O'DONNELL, ESQ.
18                               JOHN LOHRER, ESQ.
                                 United States Department of Justice
19                               20 Massachusetts Avenue, N.W.
                                 Suite 7218
20                               Washington, D.C.  20530
                                 202-514-3716
21
       Court Reporter:          JACQUELINE M. SULLIVAN, RPR
22                               Official Court Reporter
                                 U.S. Courthouse, Room 6720
23                               333 Constitution Avenue, NW
                                 Washington, D.C. 20001
24                               202-354-3187
       Proceedings reported by machine shorthand, transcript produced
25     by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S

 2              COURTROOM DEPUTY:  Please remain seated and come to

 3   order.

 4              Civil action 05-409, Aymen Batarfi versus Donald

 5   Rumsfeld, et al.

 6              Will counsel please identify yourselves for the

 7   record?

 8              MR. WARDEN:  Good afternoon, your Honor.  Andrew

 9   Warden on behalf of the government.

10              THE COURT:  Mr. Warden.

11              MR. WARDEN:  With me at counsel table is Sean

12   O'Donnell and Jack Lohrer.

13              THE COURT:  Good afternoon, counsel.

14              MR. CONNOLLY:  Good afternoon, your Honor.  John

15   Connolly and William Murphy on behalf of the petitioner, Aymen

16   Batarfi.

17              THE COURT:  I want to talk for a few minutes before I

18   get responses from counsel.

19              Because the Court received the parties' joint motion

20   for a stay of proceedings in view of the government's

21   determination that Dr. Batarfi has been approved for transfer

22   from Guantanamo, this hearing was scheduled by the Court for

23   today to discuss that motion to stay and also to address an

24   issue that arose at the very end of the hearing that I presided

25   over on March 19th, and that was on the petitioner's motion for
```

1    supplemental relief regarding the government's compliance with

2    the discovery order, and also my order to show cause why the

3    government and its attorneys should not be held in contempt for

4    violating my January 29th, 2009 order, and also orders to

5    produce exculpatory information.

6            As part of Dr. Batarfi's reply brief in support of his

7    motion for supplemental relief regarding the government's

8    compliance with discovery orders, counsel informed the Court

9    that they had discovered amid the medical records of Dr. Batarfi

10   produced to counsel pursuant to this Court's order a highly

11   exculpatory record that pertained not to Dr. Batarfi but instead

12   to another detainee, "ISN," for purposes of this proceeding,

13   "blank."  He's one of the government's fact witnesses the

14   government intended to rely on in its case against Dr. Batarfi.

15   Dr. Batarfi's counsel informed the government that this document

16   had been produced and that counsel believed they were entitled

17   to all other similar records regarding "ISN blank," the

18   government took this position that this had been a, quote,

19   inadvertent production, end quote, and sought to, in the

20   government's words, sequester the document.  Counsel asked the

21   Court for an order that they could use the document and that the

22   government should have to produce all other similar records for

23   "ISN blank" or that the government should be precluded from

24   relying on "ISN blank" in this case.  At the March 19th hearing

25   the Court granted petitioner's request and directed the

1   government to produce the remaining documents.  The discussion

2   at the end of the hearing focused on whether the petitioner's

3   counsel could share this information with counsel for other

4   petitioners and in whose habeas cases the government was also

5   relying on "ISN blank" as a fact witness.  When that question

6   was addressed to the government, Mr. Henry informed the Court

7   that because this Court had now ordered that those records be

8   produced to Dr. Batarfi's counsel, Dr. Batarfi's counsel could

9   share those with the other attorneys pursuant to the protective

10  order.  Upon reflection and after reviewing the pleadings, the

11  government's response to the Court's order to show cause and the

12  transcript of the hearing, the Court now has additional

13  questions for the government regarding this document.  First the

14  Court notes that in Mr. Henry's declaration the government finds

15  exculpatory evidence, and I quote, "as evidence tending to

16  materially undermine the information in the factual return as

17  the basis for the petitioner's detention as well as any evidence

18  tending to materially undermine the credibility of any fact

19  witness relied upon to justify petitioner's detention."  End

20  quote.  And that's the government's language.  The Court

21  therefore will require an explanation from the government as to

22  why the exculpatory evidence, the document, was not produced

23  pursuant to this Court's September 22nd, 2009 order to produce

24  exculpatory evidence.  Moreover, the Court will require an

25  explanation as to why the government took the position that this

1    document was, quote, "inadvertently produced," end quote, and

2    refused to produce the document or related documents until the

3    Court's order at the March 19th, 2009 hearing.  Finally, the

4    discussion at the March 19th, 2009 hearing revealed information

5    that this Court had not been aware of previously, that is, that

6    "ISN blank" apparently is a fact witness in a number of other

7    cases, habeas cases.  Was this document and any other produced

8    as exculpatory evidence in those cases?  And if not, why not?

9    If it was, why was it not produced in this case before this

10   Court, and why should the government and its attorneys not be

11   held in contempt for failure to produce it pursuant to this

12   Court's orders?  It is significant that this entire discussion

13   occurred at a hearing convened in part to discuss the Court's

14   order to show cause as to what the government acknowledges were

15   failures to comply with the Court's orders, including a failure

16   to produce other exculpatory evidence.  It is also significant

17   that this entire revelation was apparently made only, quote, in

18   the words of the government, "inadvertently."  End quote.  We've

19   already had a hearing on cross-motions for judgment of the

20   record, and until this information was revealed, the government

21   was moving forward with the merits determination on April the

22   6th where it was again asking this Court to find that Dr.

23   Batarfi should continue to be detained as a, quote, "enemy

24   combatant."  End quote.  To hide, and I don't use that word

25   loosely, to hide relevant and exculpatory evidence from counsel

1   and from the Court under any circumstances, particularly here

2   where there is no other means to discover this information and

3   where the stakes are so very high and due indeed include

4   indefinite detention, is fundamentally unjust, outrageous, and

5   will not be tolerated.  Fortunately, Dr. Batarfi's counsel have

6   been diligent and tireless in their efforts, but no one, Dr.

7   Batarfi and not this Court, should have to rely on luck to

8   discover evidence critical to a just resolution or an

9   inadvertent disclosure, as the government says.  In the face of

10  repeated failures to comply with this Court's orders, to produce

11  exculpatory evidence, even after orders to show cause and the

12  requirement of no fewer than four declarations from officials at

13  the highest levels of our government, how can this Court have

14  any confidence whatsoever in the United States government to

15  comply with its obligations and to be truthful to the Court?

16  The parties have asked this Court to stay the merits

17  determination scheduled for April the 6th and the 7th in view of

18  the government's determination that Dr. Batarfi is cleared for

19  release and to allow the government to, quote, "initiate," end

20  quote, the diplomatic process related to his transfer.  While

21  the Court on the one hand applauds the government's belated

22  decision to transfer Dr. Batarfi, the Court must note the

23  disturbing pattern in this and other cases.  Time and again we

24  have seen that only once finally pressed to present evidence to

25  justify a petitioner's detention does the United States

1    belatedly, quote, "withdraw," end quote, charges or allegations

2    and/or transfer the detainee.  Dr. Batarfi's ill.  No one

3    disputes that.  He's been at Guantanamo for seven years, longer

4    than most of the men detained there.  This Court wants to ensure

5    that his case does not yet again return to a state of limbo or

6    that he linger in Guantanamo while the government conduct its,

7    in its words, quote, "diplomatic process."  End quote.  The

8    Court will therefore require a status report in 14 days and

9    every 14 days thereafter and expects to hear that this matter

10    has been resolved or that significant progress has been made.

11           Now, let me just say this:  It was a tremendous effort

12    on this Court's part in moving other matters from this Court's

13    calendar to afford Dr. Batarfi his fair day in court on April

14    the 6th and April the 7th, and now being told at the eleventh

15    hour, which appears to be fairly customary for the United States

16    these days, that he'll be repatriated or returned to his country

17    of origin or another country, my time is very precious, it's

18    more precious than the time of the attorneys at the Department

19    of Justice, I can assure of you that.  And I don't take very

20    lightly a suggestion at the eleventh hour, especially after this

21    man has been detained without due process for seven years, that

22    this Court's effort to afford him his fair and appropriate day

23    in court are for naught.  I'm not going to let this case drag

24    on, or any of the other cases on my calendar, indefinitely while

25    the government embarks on what it calls its diplomatic process

1   because I have seen in the past that that diplomatic process can

2   indeed span months and years, and I have some serious concerns

3   as to whether it's yet and still another ploy not to return Dr.

4   Batarfi to his country of origin but to continue with his

5   deprivation of his fair day in court, and I'm concerned about

6   that so I want status reports every 14 days.  I will not extend

7   the time for those status reports, and if I don't see that

8   there's progress in returning not only Dr. Batarfi but anyone

9   else on my calendar who's been cleared for return, then I'm

10   scheduling a merits determination, and at the least at this

11   level in this judicial process affords that detainee, whether it

12   be Dr. Batarfi or anyone else, his fair day in court.  I'm not

13   going to continue to tolerate indefinite delay on the part of

14   the United States government.  I mean, this Guantanamo issue is

15   a travesty.  It ranks up there with the determent of Japanese

16   American citizens years ago.  It's a horror story in the

17   American system of juris prudence, and quite frankly, I'm not

18   going to buy into an extended indefinite delay of this man's

19   stay at Guantanamo, or anyone else on my calendar.

20         Who wants to respond for the Court's concerns?

21         MR. WARDEN:  Thank you, your Honor.  Let me take up

22   the stay matter if I could first initially.  We are certainly

23   cognizant of the Court's time and effort that it's put into this

24   matter.

25         THE COURT:  And the government should also be

```
 1    cognizant of the fact this man has been there for seven years.

 2              MR. WARDEN:  Understood, absolutely.  And consistent

 3    with the President of the United States priority, which he

 4    issued an executive order the day after he took office, we want

 5    to close Guantanamo within a year, and we are undertaking

 6    efforts to do that across all federal agencies, and in

 7    particular, in this case the committee that has been set up by

 8    the president reviewed Dr. Batarfi's case and approved him for

 9    transfer, and everybody here I think agrees that he should get

10    out of Guantanamo --

11              THE COURT:  Absolutely.

12              MR. WARDEN:  -- as soon as possible.

13              THE COURT:  Absolutely.  Why does it take him so long?

14    Why did it take the presence of a judge affording the litigant a

15    trial of the merits, why did it take that to spark this

16    decision?

17              MR. WARDEN:  Well, certainly the process by way the

18    Executive Order Committee was, is assembling information.  We've

19    got two hundred cases to deal with, and prioritizing the review,

20    obviously every detainee's case is important, but not everybody

21    can go first.

22              THE COURT:  Right.  But those cases -- I'm not trying

23    to tell the Department of Justice how to conduct its business --

24    but these cases have to be the most important cases at the

25    Department of Justice and people ought to be working around the
```

1   clock.  You can't prioritize one Guantanamo case over another

2   one.  These men have been in custody.  It should be important

3   and there should be a nonstop 24/7 decision to do whatever

4   they're doing over there and make decisions in a timely manner.

5   It shouldn't be only after a federal judge says I'm not going to

6   tolerate any more, I'll call the case up and down on the merits,

7   and all of a sudden this process unwinds, we want to send him

8   back after seven years.

9          MR. WARDEN:  We were certainly cognizant of your

10  Honor's order.  We were also very cognizant of your Honor's

11  concerns that a review be conducted after the merits

12  determination in the sense that this Court and the parties and

13  the litigants spent a significant amount of time and resources

14  into an endeavor that for all intents and purposes may not be

15  productive for everybody, so we were cognizant of that, and we

16  informed the Court minutes after the review board made its

17  decision so that the Court could adjust its calendar

18  appropriately on Friday, Friday morning.  We had conversations

19  with your staff, and so we're certainly very cognizant of that,

20  and we want to make sure that we are simply not trying to

21  manipulate the system or play games.  We take this matter very

22  seriously.  The review of all of the detainees is a very serious

23  /WEUZ.  The President made it clear that he wants a collection

24  of information to be assembled, that he wants new individuals to

25  take the review of that to ensure that all his positions are

1    appropriate, and petitioner's case was one of the first to be

2    reviewed, and we have given it appropriate, we think, priority

3    here, and so we are all in agreement that he should be released

4    from Guantanamo.

5           Now, with respect to the diplomatic effort, the

6    process by which the United States government obviously engages

7    with other nations to transfer detainees is a very complicated

8    one.  We certainly understand your Honor, again, that this not

9    be put on the back burner, and I can assure you that it will not

10   be, but I also want to emphasize, and I know it's frustrating

11   and it's frustrating to the United States' system, but the

12   situation in which we repatriate and detainees, it's not as

13   simple as in a prison context where you can simply open up the

14   prison doors and allow someone to walk out.  We have to engage

15   other nations.  Those nations, like this government, have

16   various agencies.  Often they are fractured among themselves.

17   They have various concerns, so the State Department and other

18   offices at the government are certainly going to be working

19   diligently here in this matter, but the process --

20          THE COURT:  So then there's no prejudice then to the

21   government if, pursuant to the joint motion to stay proceedings,

22   recognizing the government's intention to return Dr. Batarfi to

23   his country of origin, that this Court order that he be

24   returned?  There's no prejudice then with an outstanding Court

25   order, then, is there?

1      MR. WARDEN:  I wouldn't agree with that.  We --

2      THE COURT:  What's the prejudice?

3      MR. WARDEN:  Well, we're the process by which the --

4  we're not conceding that there's no lawful basis here to detain

5  him.  What we're saying is that the President's Executive Order

6  Committee has decided that he should be among the detainees to

7  be transferred.

8      THE COURT:  Absolutely.  And if I totally agreed with

9  that, then why shouldn't I follow it up with a Court order in

10 recognition of the efforts of the United States government to

11 return Dr. Batarfi to his country of origin, "It is so ordered,"

12 why shouldn't I do that?

13     MR. WARDEN:  Well, we would --

14     THE COURT:  Otherwise, otherwise, this process --

15     MR. WARDEN:  Well, certainly, your Honor --

16     THE COURT:  -- unravels upon the timing of the United

17 States.  Why shouldn't there be a Court order in place to ensure

18 that this is all done in a timely manner?

19     MR. WARDEN:  Well, I think certainly --

20     THE COURT:  -- and there be some penalty if it's not

21 done in a timely manner?  Here's my point:  You can't just say,

22 All right, Judge, we're not going to go to trial.  He should be

23 returned.  You can focus on other matters on April the 6th and

24 7th.  We're done here.

25     He's going to be returned when?

1          Well, we don't know that, Judge.  It's a diplomatic

2    process, and now we have to enlist the aid of our diplomates to

3    talk to other diplomats from other countries and we don't know

4    how long it's going to take.  I guess we could look at other

5    cases on your calendar and recognize it could take over a year

6    or so, but it's going to happen.  Trust us, trust us.

7          Do you know what?  Unfortunately I can't trust the

8    government, so why shouldn't I follow it up?  You're asking me

9    to take this matter off my calendar, and I can't follow-up with

10   a Court order saying I agree with you, I'm going to grant your

11   motion, so return him?  What's the prejudice?  I don't see what

12   the prejudice is.  I'm not saying return him overnight.  I

13   understand you can't do that, but by the same token, I'm not

14   going to tolerate months of delay.  I'm simply not going to

15   tolerate that in this case or the other cases.  I'm going to

16   schedule this case for a merits determination, and if I find

17   that the evidence is insufficient to hold him, I'm going to

18   order him to be forthwith released.

19         MR. WARDEN:  I understand everyone agrees he should be

20   released.  As far as a Court order, as far as the status report

21   the court requires takes care of that.  This is not a situation

22   that will be put to the back burner, but I think it is important

23   to recognize the limits of that that are in place on all the

24   parties with respect to the transfers of the detainees.  The

25   Court of Appeals has held the Court cannot order detainees to be

1   released into this country.  That's the law in --

2          THE COURT:  And that means that the Weavers are still

3   being held, even though everyone recognizes there's no lawful

4   basis to hold him?

5          MR. WARDEN:  Still there, your Honor.

6          THE COURT:  Still locked up.

7          MR. WARDEN:  They're at priority to be reviewed, along

8   with the situation here.

9          THE COURT:  So I should have confidence in this

10  review process then?

11         MR. WARDEN:  You should have confidence in the review

12  process.  It is one that is certainly robust, but as far as the

13  remedy goes for these cases, the Supreme Court certainly was

14  less than clear as to what the appropriate remedy would be for

15  habeas.  The Court of Appeals has now spoken very clearly that

16  release into the United States is not appropriate.

17         THE COURT:  And to put the record clear, I'm not

18  suggesting that at all.  I'm not suggesting that at this

19  juncture.  I'm not doing that at all, but, I mean, is the

20  government addressing alternatives?  I mean, suppose it's not

21  feasible to repatriate him to his country of origin, then what

22  do you do?  The man is ill.  Why shouldn't he be in a hospital?

23  If you recognize that he shouldn't be detained in Guantanamo,

24  why shouldn't he be in a hospital getting the best medical care

25  that can be afforded him?

1          MR. WARDEN:  Well, I can assure you, as your Honor

2    knows from other matters, the medical staff at Guantanamo is

3    certainly very -- is very competent; they're well-staffed.  Your

4    Honor has been provided with declarations in other cases, and

5    independent medical examiners have gone down in your other

6    cases, and so he's certainly receiving appropriate medical care.

7    Again, we are all working towards the same goal here, I think,

8    which is to get him out of Guantanamo.  He was cleared for a

9    transfer on Friday, and so obviously the State Department has

10   been working for years talking with multiple countries to

11   convince them to accept detainees.

12          THE COURT:  That makes my point:  been talking for

13   years.  So why should I have any confidence in this process?

14          MR. WARDEN:  Well, you should have confidence it for

15   the following --

16          THE COURT:  Essentially he wouldn't have been cleared

17   had the government not been under the notion that he is and have

18   evidence finding that he is an enemy combatant?

19          MR. WARDEN:  Please repeat your question, say it again

20   to make sure I understood it.

21          THE COURT:  The government couldn't have cleared him

22   for release from Guantanamo had there been evidence sufficient

23   to support a finding that he is indeed an enemy combatant, is

24   that not correct?

25          MR. WARDEN:  I think I would take issue with that

1    slightly in the sense that we're not conceding here right now

2    that there's no lawful basis to hold Dr. Batarfi.  What the

3    executive order has recommended is that, consistent with the

4    foreign policy interests, the national security interests, the

5    United States, he should be transferred to an appropriate

6    country, and I think that just gets back to your question about

7    the Court order.

8              THE COURT:  And not be detained, correct?

9              MR. WARDEN:  Well, that would be -- again, I can't

10   predict what another country would do.

11             THE COURT:  Because we don't know which country will

12   take him.

13             MR. WARDEN:  We don't know that.  Those countries

14   obviously have their own systems of laws.

15             THE COURT:  Why shouldn't this case proceed on a dual

16   track then?  Let the government, if the government wants to

17   release him, that's fine.  Why should I interfere with what I

18   planned for April 6th and 7th?

19             MR. WARDEN:  We'll be in the same place at the end of

20   the day.

21             THE COURT:  Oh, I'm not so sure about that, because if

22   I find there's no evidence to hold this man, that indeed he's

23   not an enemy combatant, as a matter of law I'm going to order

24   his release, and there will be significant sanctions if he's not

25   released.  Here it's up to the whim of the United States and its

1    diplomatic process, whatever that means.

2        MR. WARDEN:  Your Honor has certainly put a mechanism

3    in place to have appropriate oversight of those efforts, and I

4    would just --

5        THE COURT:  I'm not an overseer.  I administer

6    justice, and do you know what?  I don't have any problems

7    staying this case, but it's not going to be stayed indefinitely,

8    and I see the handwriting on the wall because that's happened in

9    other cases on my calendar, and it's not consistent with the

10   fair administration of justice.  I'm not an overseer.

11       MR. WARDEN:  Of course you're not, your Honor.  What

12   I'm saying is if your Honor has concerns --

13       THE COURT:  I do have concerns.

14       MR. WARDEN:  -- about the process that's being

15   undertaken here --

16       THE COURT:  Absolutely I do.

17       MR. WARDEN:  -- the status reports can address those.

18       What I would say is that the process, the diplomatic

19   process that the government undertakes necessarily is a very

20   sensitive one.  Often the country that we are trying to --

21       THE COURT:  It could be months or years for diplomats

22   to sit around and drink tea and try to reach an accord, and

23   that's fine for diplomates to do that.  I'm not a diplomat.

24   What I should say is, what I'm inclined to do at this point is,

25   that's fine if you want to embark on your diplomatic process,

1    that's fine, more power to you, but I'm going to proceed with

2    the merits determination on April 6th because that's my job.

3            MR. WARDEN:  I understand the concern.  I think we

4    should at a minimum let the process play out.  If your Honor has

5    concerns that it's not moving --

6            THE COURT:  Counsel, I do have concerns because it

7    just strikes me as very suspicious, very suspicious on the eve

8    of trial all of a sudden out of the clear blue, you know, two

9    months after the government took an adamant position that this

10   man should be held, that the evidence would sustain a finding of

11   him being an enemy combatant, all of a sudden I'm supposed to

12   put the brakes on, put a halt to the proceedings, find something

13   else to do on April the 6th and 7th because the government tells

14   me that, you know, we want to sit around a diplomatic table and

15   talk about what we're going to do with Dr. Batarfi.  There's no

16   end in sight.

17           MR. WARDEN:  We don't know that at the moment, and

18   that's why I think --

19           THE COURT:  Tell me what day he'll be transferred

20   then.

21           MR. WARDEN:  I don't know.

22           THE COURT:  Oh.

23           MR. WARDEN:  I do not know the answer to that because

24   it necessarily requires --

25           THE COURT:  If you can tell me he'll be out of

1   Guantanamo in 30 days.

2   　　　　MR. WARDEN:  Unfortunately I cannot make that

3   representation because --

4   　　　　THE COURT:  You can't tell me he'll be out of

5   Guantanamo this year, can you?

6   　　　　MR. WARDEN:  I can't say that either.

7   　　　　THE COURT:  Then what's accomplished by this then?  I

8   should give him his fair day in court, and if he doesn't win, he

9   can take it to the Circuit and if the government loses they can

10  take it to the Circuit but at least I will have discharged my

11  responsibilities as a United States judge to decide cases in a

12  prompt manner to the best of my ability, and if the government

13  wants to embark on some diplomatic process that may take months

14  or years, more power to them.

15  　　　　MR. WARDEN:  I think that the problem with that

16  approach is that again, we're all in agreement here that Dr.

17  Batarfi should be released.

18  　　　　THE COURT:  And he's sick too.  The man's sick, right?

19  Everyone agrees he ought to be in the hospital, he ought not

20  behind bars.  He ought to be in a hospital getting treatment.

21  This is barbaric treatment of this man without any regard to his

22  rights whatsoever and I'm not going to be a part of it.  I'm not

23  going to sit back and just scrutinize some progress reports

24  every two months and say I guess the diplomatic efforts are

25  unwinding, again, slowly but surely.  I have no doubt that at

1    some point in time he'll be returned somewhere.  Hope springs

2    eternal.  Counsel, I'm just not going to do it.

3         MR. WARDEN:  Let me suggest this:  I think the process

4    that your Honor has put in place is certainly prudent and

5    incremental given I think that everyone here agrees that a

6    common goal should be achieved.

7         THE COURT:  Justice.  Justice, that's the common goal,

8    and I don't see it by just approving this joint motion and

9    getting some reports every two months, every two weeks.

10        MR. WARDEN:  If let's say after thirty days that the

11   Court decides that it needs to recalendar this motion, we can

12   address that.  I think, though, to give the process a fair

13   shake, it's only been two days.

14        THE COURT:  Fairness?  You're talking about fairness?

15   This man's been in jail for seven years and the government now

16   says it's time to look at fairness?

17        MR. WARDEN:  We certainly are -- we agree, your Honor,

18   he should be out of Guantanamo.  The process has to be

19   diplomatic.  I understand your frustration.

20        THE COURT:  No, it doesn't either.

21        MR. WARDEN:  It can be consistent with the fair

22   administration of justice.  That's another route and diplomacy

23   can unravel at its pace.  But if he wants Dr. Batarfi out of

24   Guantanamo, just practically speaking here, we cannot open the

25   door and have him walk across the line to Cuba.  That is just

1   not an option.  It's not the D.C. jail.  We can't put him in a

2   boat and give him free meals and say good luck to you, we hope

3   you find an island.

4         THE COURT:  Maybe you can't do that but I can

5   certainly do whatever is consistent with the fair administration

6   of justice.  If I find that there's no factual predicate and

7   insufficient evidence to hold this man as an enemy combatant, I

8   can be as creative as my judicial imagination will allow me.  I

9   can find a remedy and I can enforce that remedy.

10        MR. WARDEN:  I understand --

11        THE COURT:  And I will enforce that remedy.

12        MR. WARDEN:  Of course you will.  But I think

13   necessarily the most constructive solution, I think, I mean, I

14   haven't heard petitioner's counsel, for everyone is to find an

15   appropriate place for Dr. Batarfi.  It's not to stick him in a

16   boat.

17        THE COURT:  No one's suggesting that.  No someone's

18   suggesting that at all.  The most effective thing is to close

19   that place down, that's the most effective thing, and find some

20   other place to put these people and give them their fair day in

21   court.  If the government wants to at its leisure send out

22   diplomats or whoever, but I'm not going to sit back and wait for

23   that process to unravel.  I didn't take an oath to say I'll

24   administer justice after efforts at diplomacy have failed.

25   That's fine if the United States wants to, after seven years,

```
1    repatriate this ill man who on all accounts is ill, and that's
2    fine, this has been set for a trial.   I've spent a heck of a lot
3    of time putting this case in a posture, fighting with government
4    attorneys, dealing with the failures of the government to
5    produce exculpatory evidence, and now we have more failures to
6    produce exculpatory evidence and someone's going to pay a price
7    for that, for not having disclosed that document that everyone
8    knows is exculpatory, and the sanction is going to be high.
9    I'll tell you quite frankly if I have to start incarcerating
10   people to get my point across I'm going to start at the top, I'm
11   not going to start at the bottom.   I'm going to start at the
12   top.
13            MR. WARDEN:   Understood, your Honor.
14            I think just to close the issue on --
15            THE COURT:   Close it.   All right, go ahead.
16            MR. WARDEN:   If your Honor wants to keep discussing
17   it, I think the mechanism that your Honor has put in place is
18   appropriate, I think for everyone's concern, everyone's goal is
19   to get Dr. Batarfi out of Guantanamo, to avoid an unnecessary
20   use of party resources, judicial resources, we think to give the
21   process some time.   If it does not bear fruit, then we can take
22   next steps, but at the end of the day we're all going to be
23   working towards getting Guantanamo --
24            THE COURT:   Take time and bear fruit?   We're talking
25   about a man's liberty interest.   Time?   The government hasn't
```

1    been concerned about time for the past seven years.

2         MR. WARDEN:  Your Honor, with respect, since January

3    21st, there has been absolutely a new change in policy.

4         THE COURT:  I applaud the changed attitude.

5         MR. WARDEN:  And we are really trying -- working to

6    try to close the place.  I cannot emphasize that enough.

7         THE COURT:  I applaud the attitude of the new

8    administration.  I'm all for that but I can't just say this

9    diplomatic process that may take an indefinite period of time,

10   just continue to do so.  That's not consistent with fairness.

11        MR. WARDEN:  We're not asking for an indefinite stay,

12   and indeed the parties have come to what we thought was a

13   reasonable solution in that regard, and that requires the status

14   reports.  Obviously the petitioners have reserved their right to

15   recalendar this matter, but we all thought in the collective

16   interest of the parties and the Court it made sense to let this

17   process proceed.  We understand your concerns.  And we would ask

18   that the Court adopt the stay motion consistent with your

19   Honor's modification for 14-day status reports.  I would just

20   note that the status reports, at least as far as the government

21   is concerned --

22        THE COURT:  I just thought of another way to deal with

23   that.  I'm not going to have some bureaucrat type up something

24   and file it and go on to do something else.  There will be

25   status hearings before me and people will have to tell me

1   exactly face-to-face what they're doing, and I want high-level

2   officials from the Department of Defense here to tell me, so

3   forget about the status reports.  There will be hearings every

4   14 days if I approve this motion, and I haven't decided whether

5   I'm going to do that or not.

6           But the other point is, even if I approve it, that

7   doesn't preclude me from commencing this trial on April the 6th.

8           MR. WARDEN:  Understood, your Honor, and I think if

9   that's the course the Court accepts, I think it would be perhaps

10  beneficial certainly to hear from representatives at the

11  Department of State so your Honor can hear the difficulties, the

12  issues that are being faced, and the efforts that have gone into

13  that, and elucidate some of these issues for you.

14          THE COURT:  I said Department of Defense.  Department

15  of State as well, somebody who is in charge of whatever the

16  diplomatic process is there.  I'll figure out who I'll require

17  to be at the hearings.

18          What about the exculpatory evidence?  I am really

19  concerned about that.  I am very disturbed.

20          MR. WARDEN:  Understand, your Honor.

21          THE COURT:  And that's putting it mildly, counsel.

22          MR. WARDEN:  I understand.

23          THE COURT:  I am really upset about that.

24          MR. WARDEN:  Let me just preface this by saying

25  because this issue was not raised in the minute order, I did not

```
 1    bring the document, I did not know that this issue was going to

 2    be raised.

 3              THE COURT:  I have the document.  Do you want to see

 4    it?  You know the document I'm talking about.

 5              MR. WARDEN:  I know the document you're talking about.

 6    If we could submit something in writing to your Honor.

 7              THE COURT:  I want an answer right now from the United

 8    States government.  Right now.  If you want to supplement it,

 9    that's fine, but I want your answer right now.  And no one

10    disputes this is exculpatory evidence, correct?

11              MR. WARDEN:  I'd have to go back and look, but let me

12    explain what the context of it is.

13              THE COURT:  Do you want to take a look at the

14    document?  I have it.

15              MR. WARDEN:  I do recall the document.

16              THE COURT:  Wait a minute.  Is the United States

17    disputing this is exculpatory evidence?  Be very careful what

18    you say.

19              MR. WARDEN:  I'm not in a position right now to

20    concede that in the following sense:  That particular witness,

21    so your Honor knows --

22              THE COURT:  I think Mr. Henry conceded that at the

23    last hearing, but the record speaks for itself.  I don't think

24    there is any doubt whatsoever that that document is exculpatory.

25    It goes to the credibility, the veracity indeed of "ISN blank."
```

1           MR. WARDEN:  Agree.  Agree with that.

2           THE COURT:  And undermines his credibility, does it

3    not?

4           MR. WARDEN:  It does, and let me explain.

5           THE COURT:  Right.  So therefore it is exculpatory.

6           MR. WARDEN:  It is, and we have turned over

7    information to the petitioner's counsel about that particular

8    witness that includes again my, because I don't have all of the

9    documents --

10          THE COURT:  Be careful now.  Be careful now.  Because

11   one of your attorneys said that document was inadvertently

12   produced.

13          MR. WARDEN:  It was.  It was.

14          THE COURT:  Which is outrageous, first of all.  It was

15   inadvertently produced.  Secondly, it's just as outrageous that

16   it wasn't produced as exculpatory evidence, and I find that

17   unconscionable.

18          MR. WARDEN:  I'm not sure that we necessarily agree

19   that that individual's entire medical file --

20          THE COURT:  I'm talking about that document, and if

21   you have questions, do you want to take a look at it?  Be very

22   careful what you say now.

23          MR. WARDEN:  That's why I would like to consider this

24   in reference to all of the filings that have been made, because

25   I did not know this issue was going to arise.  I understand your

1    concern.

2          THE COURT:  Counsel, we're talking about one precise

3    document that the government maintains was inadvertently

4    produced.  There is no question whatsoever that document is

5    exculpatory.  First of all, it wasn't produced, and secondly,

6    for the government to say it was inadvertently produced and

7    wants it back, "sequestered" in the government's words, is just

8    as outrageous.

9          MR. WARDEN:  Well, that process was just consistent

10   with Rule 26, which is well established that if inadvertent

11   documents are turned over, we ask that they not be distributed

12   until we raise it with the Court, and that is what we did in

13   this particular case.

14         THE COURT:  The case law says inadvertent disclosures,

15   that's too bad.

16         MR. WARDEN:  We agree.  That's just consistent with

17   the rules.

18         THE COURT:  How can exculpatory information be

19   inadvertently released?

20         MR. WARDEN:  I don't know how that document was

21   included within the production.  But what I can say without

22   getting into --

23         THE COURT:  I just need an answer to my question.  Why

24   wasn't that document produced as exculpatory evidence?

25         MR. WARDEN:  "I don't know" is the short answer, your

1   Honor.  I truly don't.  It was inadvertently disclosed in the

2   production of that petitioner's medical records.  We, consistent

3   with our --

4           THE COURT:  That's a sad commentary, that

5   notwithstanding Judge Sullivan's order to produce exculpatory

6   evidence, its very clear plain English order to produce it, it

7   nevertheless was not produced and then subsequently

8   inadvertently disclosed.

9           MR. WARDEN:  That information, the information that

10  was in the document, my recollection of all of the productions

11  that have been made was disclosed to petitioner's counsel

12  through other documents for that particular witness we have

13  provided.  We're well aware of the issues.

14          THE COURT:  Was that document produced in the other

15  cases on my colleagues' calendars?

16          MR. WARDEN:  No, I don't believe it was.

17          THE COURT:  Has it been produced yet?

18          MR. WARDEN:  To?

19          THE COURT:  To all my colleagues.

20          MR. WARDEN:  Other cases?

21          THE COURT:  This isn't a cat-and-mouse game.  Right.

22  I know it's exculpatory.

23          MR. WARDEN:  I don't believe it has been produced only

24  in the sense that since your Honor's order came out, it could be

25  shared with all the other counsel.

1        THE COURT:  Is there a reason why I shouldn't direct

2   the government to file a notice on all my colleagues' calendars

3   and inform my colleagues that this document exists so they can

4   take whatever action is appropriate?

5        MR. WARDEN:  I think that can be taken care of through

6   the distribution among the parties, I assume.

7        THE COURT:  Why shouldn't it be the United States'

8   burden to say, Judges, we didn't disclose this; it was

9   inadvertently disclosed.  We sought to get it back from counsel

10   and asked the Court to sequester it, but we think we should let

11   you know that it was never produced, especially since you may

12   have issued orders requiring exculpatory evidence be produced as

13   well.  Why shouldn't the United States do that in each and every

14   case on my colleagues' calendar?

15        MR. WARDEN:  If your Honor thinks that's appropriate.

16        THE COURT:  Absolutely, and so ordered, and that's a

17   Court order.  I want that done forthwith.

18        So you can't give me an answer as to why the

19   exculpatory evidence was not disclosed?

20        MR. WARDEN:  I do not know the process, again.

21        THE COURT:  Who at the Department of Justice can give

22   me that answer today?

23        MR. WARDEN:  I'll have to go back and confer with

24   colleagues who were involved in the document production.

25        THE COURT:  No one at counsel table can give me an

1    answer?

2              MR. WARDEN:  No.  As your Honor knows, there's been a

3    number of details.

4              THE COURT:  How do you know?  Did you ask them?

5              MR. WARDEN:  I'm aware that they weren't involved in

6    that production, that process, because, as your Honor is aware,

7    the staffing of the Guantanamo cases has had some changeover, so

8    I'll need to confer with the attorneys who were working on the

9    matter at the time.

10             But we will, consistent with your Honor's order,

11   provide that notice.

12             THE COURT:  I want it spelled out that way.  In the

13   notice to my colleagues I want each one of my colleagues

14   informed that that document, and I want that attached to the

15   notice, was not produced pursuant to any judge's order requiring

16   production of exculpatory evidence.  Subsequently, it was,

17   quote, in the language of the government, "inadvertently"

18   produced to the attorneys in this case.  Thereafter the

19   government requested its return in my case and requested the

20   Court to, quote, using the government's words, sequester, that

21   document pursuant to Court order of Judge Sullivan, this

22   document is being afforded, being provided to, being brought to

23   the attention of whoever the judge is, for whatever action, in

24   whatever consideration may be appropriate.

25             MR. WARDEN:  Understood.

```
 1              THE COURT:  All right.

 2              Anything further?

 3              MR. WARDEN:  No, thank you.

 4              THE COURT:  How do I get an answer to my question

 5   about exculpatory?

 6              MR. WARDEN:  We will submit something.

 7              THE COURT:  When?

 8              MR. WARDEN:  Before the end of the week.

 9              THE COURT:  Well, we'll talk about the timing.

10              Let me hear from petitioner's counsel.  Why don't you

11   want to go forward on April the 6th?  I can approve this or I

12   can just let it unwind as the diplomatic process and you get

13   your fair day in court and I can call the case up and down on

14   the merits.  At least I can sleep comfortably at night knowing

15   I've discharged my judicial responsibility and not have to worry

16   about when this man will ever be repatriated into some country,

17   if at all.

18              MR. CONNOLLY:  Your Honor, first of all, the

19   petitioner is very grateful for all that you have done and your

20   staff has done in this case.  I want to make that absolutely

21   clear.

22              And incidentally, we were able to speak with our

23   client this morning and indicate to him that the news that the

24   government announced just last Friday, and we were actually

25   grateful for the government for facilitating that, and of course
```

1    our client it hopeful, but as your Honor points out, he's not

2    out until he's out.  I must say I have to concede this is a

3    joint motion for stay.  I actually drafted it and I submitted it

4    and we believed when we drafted it and submitted it that the

5    Court would take it a little bit differently.  We had hoped that

6    we would be saving some judicial resources as well, and honestly

7    I --

8              THE COURT:  And certainly I'm hard pressed, I'm

9    concerned about what's going to happen, if anything, in this

10   case, because I've seen other cases where people are still

11   languishing in Guantanamo.  I guess the diplomatic process had

12   hit a snag or is proceeding at a snail's pace.

13             MR. CONNOLLY:  Your Honor, we've been involved in this

14   case for four years and we've watched all the cases come and go

15   and we've watched many of the petitioners who been ordered

16   released remain languishing in Guantanamo after the court's

17   issued writs, so that was part of our thinking.  I'm not going

18   to argue against our case because we absolutely agree with the

19   general sentiment that the Court is expressing this morning.  We

20   feel like it is in our client's interest at this point in time

21   to work with the government rather than against them, and for

22   the first time in four years we feel like we have an opportunity

23   to work with the government.  That didn't come out until the

24   announcement was made last Friday our client was going to be

25   returned.  And because of the things that we can't go into on

1   the public record, there are concerns about repatriating our

2   client, and it would be greatly to our benefit, we believe, and

3   to our client's benefit, to have the resources of the United

4   States of America, particularly the Department of State, working

5   on our behalf in an effort to repatriate our client.  Now, we

6   fully understand that those resources have not been directed

7   with full fervor with respect to some other detainees in the

8   past and we're very much concerned that that might happen again.

9   I think your Honor has made this Court's position very, very

10  clear this morning.  I think the government has heard where your

11  Honor stands on this.  I believe the Department of State will

12  hear it from us and not from the government counsel and I think

13  that that we ought to at least give that process a few days to

14  see where it goes.

15          Now, one other suggestion I had is, while thinking

16  about this, is that if the procedure bogs down, as it has in so

17  many other cases, one thing that we had suggested at our last

18  hearing was argument on our motion for judgment, which we think

19  is now -- we think have been -- there is no reason to reconsider

20  that because the government has taken a new position on its own

21  authority to detain because there has been substantial new

22  evidence that has been disclosed since we briefed that and for

23  other reasons as well, so we thought, or I was thinking just now

24  that if your Honor is dissatisfied with the progress of the

25  repatriation efforts and if indeed we are dissatisfied with

```
1   those repatriation efforts, perhaps in as little as 14 days we
2   can could ask your Honor to schedule a hearing on what is in
3   fact a fully briefed motion and perhaps your Honor could reach a
4   resolution very quickly in the order.
5           THE COURT:  Hang on one second.
6           (There was a pause in the proceedings.)
7           THE COURT:  Go ahead.
8           MR. CONNOLLY:  So in any event, I thought that one way
9   to proceed might be if the Court is dissatisfied after 14 days
10  and we think that the process is going to bog down, just set a
11  date for an immediate hearing.
12          THE COURT:  You've asked for 30 days in your motion,
13  though; is that correct?
14          MR. CONNOLLY:  We did, because we thought that frankly
15  we didn't know how long it was going to take.
16          THE COURT:  Look, I'm not trying to upset this plan in
17  place.  I'm not trying to do that at all.  It's just very
18  frustrating from where I sit presiding over these cases and to
19  see the false hope that I've already seen on some of these other
20  cases, it's like more of the same.
21          MR. CONNOLLY:  Right.
22          THE COURT:  Noncompliance with Court orders.  The
23  government says it's going to do something and it doesn't.
24  Judges order the government to do things.  They don't.  At some
25  point, you know, it's just hard to accept representations of the
```

1    party when there is continued noncompliance with orders.

2         MR. CONNOLLY:  I appreciate that, your Honor, and your

3    frustration is heard loud and clear.  I will say this:  that

4    your work has borne fruit in a way in this case and in other

5    cases as well.  I don't know if you recall, but the last thing

6    that happened at our last hearing, your Honor used or threw out

7    the possibility of, as to whether or not the case would be

8    resolved in some way, and you immediately recognized that that

9    was not like an ordinary civil case where you could go to a

10   mediation, but in fact the government took that to heart.  We

11   took that to heart.  And we prompted this process that resulted

12   in the stay motion that we had filed today because of the

13   Court's orders, and I think, you know, I'm not privy to the

14   internal deliberations of the government, neither counsel here

15   today or the executive review team, but we do think that your

16   Honor's suggestion had some effect, and certainly if our side

17   has aggravated your Honor by filing this motion --

18        THE COURT:  Oh, I'm not aggravated.  I may raise my

19   voice.  I'm not aggravated.  It's nothing personal.  I have the

20   highest regard for the attorneys in the well of the court and

21   everyone else at the Department of Justice.  It's never

22   personal.  It may be frustrating, but it's never personal.

23        MR. CONNOLLY:  What I'm hearing that I was surprised

24   at and I shouldn't have been perhaps is that your chambers, your

25   Honor has put so much work into the case, that you and the court

1    would like to see a resolution as well, a judicial resolution

2    rather than a diplomatic one, and perhaps that was, you know,

3    not very pressured to me not to have foreseen that, but --

4          THE COURT:  I don't think people sitting at my left in

5    the courtroom is going to say that either.  In fact, I know they

6    didn't because it wasn't until I started talking and thinking

7    something about this is not right.  I mean, we're at the whim of

8    the United States and I just don't want to be in that posture.

9          MR. CONNOLLY:  I can say the government I know is not

10   trying to aggravate you by filing this joint motion to stay

11   since it really came from me and not us.

12         THE COURT:  Counsel, I'm not annoyed with this.  It's

13   Dr. Batarfi I'm concerned about.

14         MR. CONNOLLY:  Look, your Honor, we are extremely

15   thankful for your concern and we are hoping --

16         THE COURT:  I want it clear, I'm not annoyed that

17   someone filed a joint motion.  I'd be hard-pressed to deny it.

18   I'm not going to deny a joint motion.  I'm just saying it's

19   frustrating.  I'm just raising a question.  I can let the

20   process unwind and also give him his fair day in court.

21         MR. CONNOLLY:  And we would be prepared to, I think,

22   with the government's consent, to say more in a private setting

23   as to why there are concerns.  There are a couple of areas of

24   concern as to why we believe that the government's working with

25   us at this point as far as preferable to us coming to court and

1   asking for orders and so forth because, as Mr. Warden points

2   out, there's problematic case law in the D.C. Circuit as to the

3   Court's authority, frankly, as to what can be done, so all of

4   that went into consideration for why we filed a joint motion to

5   stay.

6          THE COURT:  I'm not giving you a hard way.  You didn't

7   annoy me.  No one annoyed me.  I just want this man to have a

8   fair resolution of his case, a fair resolution of his case in a

9   timely manner, and I'm not so sure that's going to be

10  accomplished with this, you know, this potentially never-ending

11  diplomatic process.

12         MR. CONNOLLY:  And we appreciate that and we agree

13  and --

14         THE COURT:  But do you know what?  I'm willing to give

15  it a chance.  Thirty days, that's what the parties have asked

16  for.

17         MR. CONNOLLY:  Well, your Honor, you suggested

18  fourteen days in terms of the status report.

19         THE COURT:  I think I said 14-day status reports.

20         MR. CONNOLLY:  Is that correct?

21         THE COURT:  I think what I had in mind was 14-day

22  status reports after the 30-day period, but do you know what?

23  Maybe it should be 14 days, 2 weeks from today.  And I query

24  whether it should be, you know, a bureaucrat just typing out

25  something and giving it to the attorney to file.  I want someone

```
 1   here to tell me what's going on.  This man is still

 2   incarcerated.

 3              MR. CONNOLLY:  That's certainly acceptable to us, your

 4   Honor.

 5              THE COURT:  It sounds better to say he's detained, it

 6   doesn't sound as draconian, but bottom line is, he's in a jail

 7   cell in Guantanamo.

 8              MR. CONNOLLY:  That's right, and, you know, we have

 9   to --

10              THE COURT:  And he's been deprived of due process of

11   law for seven years.

12              MR. CONNOLLY:  In any event, your Honor, I would hope

13   that you would grant the motion subject to us all returning in

14   14 days with a status report, and I think that if we're --

15              THE COURT:  I think it would probably be a combination

16   of both, a status report filed and followed by a status hearing

17   the following day or two days after, after I've had a chance to

18   reflect on what's been filed and to think about any questions I

19   want to ask.  I'm sure I'm going to have questions.  If I

20   approve this I intend to keep it on a speedy trial and it's not

21   going to be acceptable to have someone high-level, and I'm

22   talking about high level, it's not going to be acceptable to

23   have some high-level person from the Department of State and

24   Defense to tell me that the process is continuing.  I want to

25   know what's going on.  Maybe that information can be given to me
```

1   in-camera, that's fine, but I'm not going to accept the

2   representations that, Judge, we're pleased to report that the

3   process is working.

4           MR. CONNOLLY:  And we will be the first to point it

5   out that it's not working if we so believe.

6           THE COURT:  Right.

7           MR. CONNOLLY:  So I would ask, I'm not asking at this

8   point in time to schedule any motions or hearings, but if we

9   believe that the process is not working, I would suggest that

10  the Court set it in for immediate hearing on our motion for

11  judgment.  But we can face that when and if it comes to that.

12          THE COURT:  What about the exculpatory evidence issue?

13          MR. CONNOLLY:  The only thing I would have to add on

14  the ex- --

15          THE COURT:  Do you agree it's exculpatory?  Maybe I'm

16  wrong.

17          MR. CONNOLLY:  No.  Of course I filed a long brief

18  talking about how exculpatory I thought it was.  Of course we

19  don't see the whole picture.  We only see one document and, of

20  course, your Honor's order.

21          THE COURT:  The broadest order in the case.

22          MR. CONNOLLY:  The Court would give us the rest of the

23  picture if there's some other picture here.  But following the

24  hearing, I made the document available to other counsel subject

25  to the terms of the protective order, and I don't know frankly

1    whether it's surfaced anywhere else in other cases, but it has

2    been at least provided.  I don't think I have anything else to

3    say about that.  Your Honor knows from our classified filing how

4    we got the document and what we did with it once we got it, and

5    I don't think I can speak about that on the public record

6    anyway.  I mean, if your Honor is asking me whether these

7    counsel had anything to do with it, not as far as I know.

8              THE COURT:  No.  I'm not asking you to defend them,

9    no.

10             MR. CONNOLLY:  So in any event, we would ask that the

11   joint motion for stay be granted.

12             THE COURT:  All right.  We'll take a short recess.

13             Mr. Warden, anything further from any of your

14   colleagues?

15             MR. WARDEN:  No, your Honor.

16             THE COURT:  I want to take a short recess.  I need to

17   put an order in place.  I do want a response to the questions I

18   asked.

19             MR. WARDEN:  I would agree that we are all in

20   agreement here that generally Mr. Connolly is suggesting I think

21   after the status report process I think it does make sense to

22   proceed to the motion for summary judgment, at least take that

23   up on the papers without getting into the classified

24   information.  I don't think there are any factual disputes in

25   this case among the parties, and I think it's something that the

1   government has revised on its legal authority.  When your Honor

2   first heard that motion it was under the prior administration.

3          THE COURT:  Here's what's really troubling, though:

4   When I first considered essentially the cross-motions, the

5   document that had not been produced was just as relevant then as

6   it is now.  The government, at that time I considered the first

7   cross-motions, was relying upon the testimony of "ISN blank,"

8   wasn't it?

9          MR. WARDEN:  Yes.

10         THE COURT:  Correct.  And, you know, there could have

11   been a serious miscarriage of justice, because had that document

12   surfaced prior to the Court's consideration of the cross-

13   motions, that would have afforded not only the Court but the

14   attorneys for the petitioner, Dr. Batarfi, an opportunity to

15   make significant arguments, that would have been a miscarriage

16   of justice, do you agree with that?

17         MR. WARDEN:  Certainly the fact that not only that

18   document but additional discovery has been provided since then,

19   I think that completes the picture more so.

20         THE COURT:  So you agree it could have been a

21   miscarriage of justice had the Court focused on those pleadings

22   at that time not knowing that there was exculpatory evidence

23   that has a dramatic impact on the credibility of one of the

24   government's principal witnesses?

25         MR. WARDEN:  I think I would put it this way:  that

1   the credibility of that particular witness, information about

2   him, and I'm using the term "information" carefully and I use

3   that distinctly from the word "document," but information --

4             THE COURT:  Right.

5             MR. WARDEN:  -- about the credibility of that witness.

6             THE COURT:  There were two documents.

7             MR. WARDEN:  My time frame may be off here, but we

8   have produced information about the credibility of that

9   particular witness to petitioners in this case and every case

10  before the judges of this court in which that particular person

11  was a witness.

12            THE COURT:  Right, right, but that document would have

13  been the icing on the cake, though, wouldn't it, from a

14  petitioner's counsel point of view?

15            MR. WARDEN:  I think the information that's in the

16  document, and again I don't have all of the discovery in front

17  of me, but the information that's in that document is either

18  completely or largely subsumed in all of the other information

19  about that witness' credibility.

20            THE COURT:  But you're not arguing that it would have

21  been cumulative, though, are you?

22            MR. WARDEN:  It might be, and again, I don't know

23  without seeing the entire production, and your Honor hasn't seen

24  all that because this was just discovery among the parties, but

25  certainly the credibility of that witness we're aware of and we

1  are cognizant of it and we have disclosed documents and

2  information.  Now, you know, it could be the sense that there

3  is, your Honor pointed out, cumulative-type information out

4  there.  But --

5          THE COURT:  I don't think that was cumulative,

6  actually.  I really don't.  I think it was a smoking gun.  It's

7  powerful evidence.

8          MR. WARDEN:  Understood.

9          THE COURT:  Undermines his credibility.

10          MR. WARDEN:  I think the motion-for-judgment option,

11  in short the motion-for-judgment option, given I think we've had

12  significant subsequent events since your Honor took that up and

13  it could be that if the process is not -- Dr. Batarfi is not out

14  of Guantanamo in an appropriate length of time, that before we

15  get into I think what could be a very lengthy and complicated

16  merits adjudication, live witnesses and all that, that at the

17  first instance we take up a matter on the papers, and since it

18  was briefed to your Honor previously, it's something that

19  probably could be briefed and decided on in a relatively

20  expedited time frame.  It would be a way in which this case

21  could be moved forward without significant judicial resources

22  and party resources being marshaled to perform the merits-type

23  proceeding, but I think we can talk about that among the parties

24  and figure out a joint statement of facts and all that kind of

25  thing can be worked out if the process doesn't work, but I'd

1    like to give the process a shot.

2              THE COURT:  All right.  Let me take a ten-minute

3    recess.  No need to stand.  Thank you.

4              COURTROOM DEPUTY:  This Honorable Court now stands in

5    a brief recess.

6              (Recess taken at about 1:15 p.m.)

7              COURTROOM DEPUTY:  Please remain seated and come to

8    order.

9              (Back on the record at about 1:35 p.m.)

10             THE COURT:  All right, counsel.  I'm not going to say

11   much more.  I do want to see, and the government can e-mail me a

12   draft of the notice that it plans to file in the other cases, I

13   want to see a draft of that because I want to make some changes,

14   so e-mail me your draft by five o'clock today, and we'll give

15   you the e-mail address after we go off the public record.

16             I want a response to the Court's concern about this

17   inadvertently-released exculpatory evidence by noon on Friday.

18   I'm not going to extend the time, and I want whoever the high-

19   level person declarant is to sign something under penalty of

20   perjury, explaining the circumstance surrounding why that

21   document had not previously been produced, notwithstanding my

22   Court orders.  It's Friday.  If the petitioner's want to file a

23   response they can file by Tuesday at noon.  Actually, I'm

24   interested in a response, so I want a response to the

25   government's submission by noon on Tuesday.  Since the

1   government is essentially conceding that Dr. Batarfi should be

2   returned to his country of origin, it seems to me that the

3   parties should address -- well, let me back up.  The Circuit's

4   position with respect to impediments to considering conditions

5   of confinement have to do with the finding that a petitioner or

6   petitioners are indeed enemy combatants, and the rationale is

7   because they're enemy combatants district judges are powerless

8   to address conditions of confinement.  In view of the parties'

9   concession that Dr. Batarfi should be returned to his country or

10  repatriated, the question I have is whether or not there will be

11  a change in his conditions of confinement.  In other words, if

12  someone is changed to a wall 24 hours a day because he's an

13  enemy combatant, the parties subsequently agree that he should

14  be returned, it seems to me there should be a change in the

15  conditions of confinement, he's no longer an enemy combatant,

16  but I'll leave it to the parties to address that.  The question,

17  the precise question is:  Will there be a change in his

18  conditions of confinement, and if not, why not?  And I want

19  that, I want the government's submission a week from today.

20  That will be the 8th at noon, addressing the condition of

21  confinement issue.

22          And also by the 8th at noon I want the parties,

23  actually the government to address, and I want to be careful

24  because I think this order may be sealed, I want the government

25  to address the applicability of the rationale and Judge

1    Huvelle's order, sealed order, which may be unclassified now.

2    The government should be aware of what I'm talking about.  Maybe

3    the petitioner's attorneys are aware of it as well.  I want the

4    government to inform this Court whether her rationale that she

5    articulated in that case is applicable in this case.  Does the

6    government have any concerns as to which order I'm referring to?

7         MR. WARDEN:  Your Honor, because Judge Huvelle -- I

8    was present in the courtroom and was there for the reading of

9    that.  If we're sealed I can give your Honor an answer now and I

10   think take care of that, but I don't want to run afoul of any

11   sealing that Judge Huvelle has done, but I think I can give you

12   a short answer in probably two paragraphs or less.

13        THE COURT:  I don't think I'm speaking out of school

14   to say there may be efforts now to unclassify that, so --

15        MR. WARDEN:  If we're sealed I feel much more

16   comfortable because I don't want to be before Judge Huvelle

17   later this afternoon.

18        THE COURT:  I'm not trying to get you in trouble with

19   anyone or me either.  File what you believe is appropriate.  And

20   I'm mindful that it's sealed, I'm mindful, and there may be

21   portions unsealed, but I think there's something in that order

22   that's directly germane here and the government's --

23        MR. WARDEN:  If we go sealed.

24        THE COURT:  -- and the government's concession also

25   with respect to certain issues, and I think we all know what

```
 1    we're talking about.  Do petitioner's attorneys have any idea
 2    what we're talking about?
 3            MR. CONNOLLY:  No, your Honor, we do not.  We've not
 4    seen --
 5            MR. WARDEN:  I don't know, again --
 6            THE COURT:  You know which case I'm talking about?
 7            MR. WARDEN:  I was there.  I know exactly which case
 8    you're talking about, and because part of this sealing was at
 9    petitioner's counsel request, I'm not sure I can even -- it may
10    have to be an ex parte submission.
11            THE COURT:  That's fine.  Look, I'm sensitive to that,
12    so you file what you believe is appropriate.  I'm sensitive to
13    that.  I'm not going to give you a hard way to go.  I'm not
14    going to do that, all right?
15            MR. WARDEN:  Understood.
16            THE COURT:  I'm not trying to get you to run afoul of
17    Judge Huvelle's orders, etcetera, just that I'm aware of what
18    was said and I think there may be portions that are highly
19    germane.
20            MR. WARDEN:  I can say this:  We have not received a
21    transcript, and Judge Huvelle's court reporter informed us we
22    would probably not receive one for ten days, so I'm probably
23    not, going off memory --
24            THE COURT:  Two weeks is fine, counsel.  Why don't I
25    do that?
```

```
1            MR. WARDEN:  Okay.

2            THE COURT:  Two weeks from today.

3            And to the extent that you can respond, petitioner's

4   counsel, I want your response.  You may not be able to.

5            I think that's all I have.  Judge Huvelle's order, the

6   exculpatory.

7            I'm extremely displeased, let me say that again, I'm

8   extremely upset about this exculpatory evidence issue.  That's

9   all I have to say.

10           The condition-of-confinement issue, I think it's

11  highly relevant.

12           I think that's it.  Wasn't there a four?  There must

13  be.  The notice issue.  I do want to see your draft of the

14  notice.  Just e-mail that to me by five o'clock.  I may want to

15  change that.  We'll give you the e-mail address.

16           Anything further?

17           MR. CONNOLLY:  Motion to stay is granted, subject

18  to --

19           THE COURT:  I don't want -- I want to hear some more

20  argument.  It's granted, counsel.

21           Look, let me tell you something.  We all take our jobs

22  seriously.  The things I say aren't personal.  Look, you guys,

23  you gentlemen are veterans, but these are serious issues, hiding

24  the ball, you know, in a court of law?  It's not to be taken

25  personally, and you didn't annoy me by filing a joint motion.
```

1            MR. CONNOLLY:  No, your Honor.  All I meant to say was

2      to the extent that we understand the terms of the motion, do you

3      want us to -- excuse me, of the orders staying proceedings, do

4      you want us to submit an order based on the transcript, what you

5      said earlier, or, I mean, you had modified one term to say 14

6      day?

7            THE COURT:  Well, let's talk about it.  I mean, look,

8      we all have other matters.  Believe me, we all have other

9      matters.

10            MR. WARDEN:  If I could.

11            THE COURT:  We talked about the 14 days.

12            Yes, counsel?

13            MR. WARDEN:  If I could, before the hearing we were

14      discussing this amongst ourselves, and I think one thing we want

15      to work with petitioners here on this matter, and I think we had

16      suggested sitting down with petitioner's counsel, including with

17      representatives from the Department of State, to discuss some of

18      these issues that are in play here.  If I could, I think before

19      we do a status report and have somebody from the Department of

20      State appear, and maybe it makes sense for the parties to have a

21      discussion next week.  We'd certainly cognizant of not delaying

22      things unduly, but, you know, have a status report in three

23      weeks or my preference would be thirty days so we can talk and

24      then we can present a status report and if your Honor thinks

25      it's appropriate we can have somebody come down.

1          THE COURT:  I can't seriously disagree with that.  If

2     you want to submit a revised proposed order, that's fine.  Why

3     don't you do that?

4          MR. CONNOLLY:  That's fine, and we're happy to work

5     with the government, as I indicated.  We do want to keep the

6     Court involved.

7          THE COURT:  Oh, I'm going to be involved.  Yes.

8          MR. WARDEN:  We'll submit a proposed order.

9          THE COURT:  That's fine, that's fine, but I would like

10    to get it before the 6th.  I still have that block of time, not

11    that I'm going to bring you in and make you put on your case in

12    chief, but that order, the proposed order regarding the stay of

13    proceedings, I should have that.

14         MR. WARDEN:  We can submit that this week, sure.

15         THE COURT:  Thank you.  Everyone have a wonderful

16    afternoon.  Thank you.

17         Anything further?

18         MR. CONNOLLY:  No.

19         THE COURT:  Thank you.

20         (Proceedings concluded at about 1:52 p.m.)

21                        -  -  -

22

23

24

25

I N D E X

WITNESSES:

    None.

E X H I B I T S

None.

1                          CERTIFICATE

2          I, JACQUELINE M. SULLIVAN, Official Court Reporter,

3    certify that the foregoing pages are a correct transcript from

4    the record of proceedings in the above-entitled matter.

5                        _____

6                        JACQUELINE M. SULLIVAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| / | 4 |
|---|---|
| /WEUZ [1] - 10:23 | 410-783-7000 [1] - 1:15 |

**0**

05-409 [2] - 1:4, 2:4

**6**

6720 [1] - 1:22
6th [10] - 5:22, 6:17, 7:14, 12:23, 16:18, 18:2, 18:13, 24:7, 31:11, 50:10

**1**

1 [1] - 1:6
12:20 [1] - 1:7
14 [10] - 7:8, 7:9, 8:6, 24:4, 34:1, 34:9, 37:23, 38:14, 49:5, 49:11
14-day [3] - 23:19, 37:19, 37:21
1400 [1] - 1:14
19th [4] - 2:25, 3:24, 5:3, 5:4
1:15 [1] - 44:6
1:35 [1] - 44:9
1:52 [1] - 50:20

**7**

7218 [1] - 1:19
7th [5] - 6:17, 7:14, 12:24, 16:18, 18:13

**8**

8th [1] - 45:20, 45:22

**A**

**2**

2 [1] - 37:23
20 [1] - 1:19
20001 [1] - 1:23
2009 [5] - 1:6, 3:4, 4:23, 5:3, 5:4
202-354-3187 [1] - 1:24
202-514-3716 [1] - 1:20
20530 [1] - 1:20
21201-3109 [1] - 1:15
21st [1] - 23:3
22nd [1] - 4:23
24 [1] - 45:12
24/7 [1] - 10:3
26 [1] - 27:10
29th [1] - 3:4

ability [1] - 19:12
able [2] - 31:22, 48:4
above-entitled [1] - 52:4
Absolutely [5] - 9:11, 9:13, 12:8, 17:16, 29:16
absolutely [4] - 9:2, 23:3, 31:20, 32:18
accept [3] - 15:11, 34:25, 39:1
acceptable [3] - 38:3, 38:21, 38:22
accepts [1] - 24:9
accomplished [2] - 19:7, 37:10
accord [1] - 17:22
accounts [1] - 22:1
achieved [1] - 20:6
acknowledges [1] - 5:14
action [3] - 2:4, 29:4, 30:23
adamant [1] - 18:9
add [1] - 39:13
additional [2] - 4:12, 41:18
address [10] - 2:23, 17:17, 20:12, 44:15, 45:3, 45:8, 45:16,

**3**

30 [2] - 19:1, 34:12
30-day [1] - 37:22
333 [1] - 1:23
36 [1] - 1:14

45:23, 45:25, 48:15
addressed [1] - 4:6
addressing [2] - 14:20, 45:20
adjudication [1] - 43:16
adjust [1] - 10:17
administer [2] - 17:5, 21:24
administration [5] - 17:10, 20:22, 21:5, 23:8, 41:2
adopt [1] - 23:18
afford [2] - 7:13, 7:22
afforded [3] - 14:25, 30:22, 41:13
affording [1] - 9:14
affords [1] - 8:11
afoul [2] - 46:10, 47:16
afternoon [5] - 2:8, 2:13, 2:14, 46:17, 50:16
agencies [2] - 9:6, 11:16
aggravate [1] - 36:10
aggravated [3] - 35:17, 35:18, 35:19
ago [1] - 8:16
agree [12] - 12:1, 13:10, 20:17, 26:18, 27:16, 32:18, 37:12, 39:15, 40:19, 41:16, 41:20, 45:13
Agree [2] - 26:1
agreed [1] - 12:8
agreement [3] - 11:3, 19:16, 40:20
agrees [4] - 9:9, 13:19, 19:19, 20:5
ahead [2] - 22:15, 34:7
aid [1] - 13:2
aided [1] - 1:25
al [3] - 1:3, 1:6, 2:5
allegations [1] - 7:1
allow [6] - 6:19, 11:14, 21:8
alternatives [1] - 14:20
America [1] - 33:4
American [2] - 8:16, 8:17
amid [1] - 3:9
amount [1] - 10:13
ANDREW [1] - 1:17
Andrew [1] - 2:8
announced [1] - 31:24
announcement [1] - 32:24
annoy [2] - 37:7, 48:25

annoyed [3] - 36:12, 36:16, 37:7
answer [11] - 18:23, 25:7, 25:9, 27:23, 27:25, 29:18, 29:22, 30:1, 31:4, 46:9, 46:12
anyway [1] - 40:6
Appeals [3] - 13:25, 14:15
appear [1] - 49:20
APPEARANCES [1] - 1:11
applaud [2] - 23:4, 23:7
applauds [1] - 6:21
applicability [1] - 45:25
applicable [1] - 46:5
appreciate [2] - 35:2, 37:12
approach [1] - 19:16
appropriate [17] - 7:22, 11:1, 11:2, 14:14, 14:16, 15:6, 16:5, 17:3, 21:15, 22:18, 29:4, 29:15, 30:24, 43:14, 46:19, 47:12, 49:25
appropriately [1] - 10:18
approve [4] - 24:4, 24:6, 31:11, 38:20
approved [2] - 2:21, 9:8
approving [1] - 20:8
April [11] - 1:6, 5:21, 6:17, 7:13, 7:14, 12:23, 16:18, 18:2, 18:13, 24:7, 31:11
areas [1] - 36:23
argue [1] - 32:18
arguing [1] - 42:20
argument [2] - 33:18, 48:20
arguments [1] - 41:15
arise [1] - 26:25
arose [1] - 2:24
articulated [1] - 46:5
assembled [1] - 10:24
assembling [1] - 9:18
assume [1] - 29:6
assure [3] - 7:19, 11:9, 15:1
attached [1] - 30:14
attention [1] - 30:23
attitude [2] - 23:4, 23:7
attorney [1] - 37:25
attorneys [12] - 3:3,

4:9, 5:10, 7:18, 22:4, 26:11, 30:8, 30:18, 35:20, 41:14, 46:3, 47:1
authority [3] - 33:21, 37:3, 41:1
available [1] - 39:24
Avenue [2] - 1:19, 1:23
avoid [1] - 22:19
aware [8] - 5:5, 28:13, 30:5, 30:6, 42:25, 46:2, 46:3, 47:17
AYMEN [1] - 1:3
Aymen [2] - 2:4, 2:15

**B**

bad [1] - 27:15
ball [1] - 48:24
Baltimore [1] - 1:15
barbaric [1] - 19:21
bars [1] - 19:20
based [1] - 49:4
basis [4] - 4:17, 12:4, 14:4, 16:2
BATARFI [1] - 1:3
Batarfi [27] - 2:4, 2:16, 2:21, 3:9, 3:11, 3:14, 5:23, 6:7, 6:18, 6:22, 7:13, 8:4, 8:8, 8:12, 11:22, 12:11, 16:2, 18:15, 19:17, 20:23, 21:15, 22:19, 36:13, 41:14, 43:13, 45:1, 45:9
Batarfi's [7] - 3:6, 3:15, 4:8, 6:5, 7:2, 9:8
bear [2] - 22:21, 22:24
BEFORE [1] - 1:9
behalf [2] - 2:9, 2:15, 33:5
behind [1] - 19:20
belated [1] - 6:21
belatedly [1] - 7:1
beneficial [1] - 24:10
benefit [2] - 33:2, 33:3
best [2] - 14:24, 19:12
better [2] - 38:5
bit [1] - 32:5
blank [8] - 3:13, 3:17, 3:23, 3:24, 4:5, 5:6, 25:25, 41:7
block [1] - 50:10
blue [1] - 18:8
board [1] - 10:16
boat [2] - 21:2, 21:16
bog [1] - 34:10

**bogs** [1] - 33:16
**borne** [1] - 35:4
**bottom** [2] - 22:11, 38:6
**brakes** [1] - 18:12
**brief** [3] - 3:6, 39:17, 44:5
**briefed** [4] - 33:22, 34:3, 43:18, 43:19
**bring** [2] - 25:1, 50:11
**broadest** [1] - 39:21
**brought** [1] - 30:22
**burden** [1] - 29:8
**bureaucrat** [2] - 23:23, 37:24
**burner** [2] - 11:9, 13:22
**BUSH** [1] - 1:6
**business** [1] - 9:23
**buy** [1] - 8:18

## C

**cake** [1] - 42:13
**calendar** [9] - 7:13, 7:24, 8:9, 8:19, 10:17, 13:5, 13:9, 17:9, 29:14
**calendars** [2] - 28:15, 29:2
**camera** [1] - 39:1
**cannot** [4] - 13:25, 19:2, 20:24, 23:6
**care** [5] - 13:21, 14:24, 15:6, 29:5, 46:10
**careful** [2] - 25:17, 26:10, 26:22, 45:23
**carefully** [1] - 42:2
**case** [43] - 3:14, 3:24, 5:9, 7:5, 7:23, 9:7, 9:8, 9:20, 10:1, 10:6, 11:1, 13:15, 13:16, 16:15, 17:7, 22:3, 27:13, 27:14, 29:14, 30:18, 30:19, 31:13, 31:20, 32:10, 32:14, 32:18, 35:4, 35:7, 35:9, 35:25, 37:2, 37:8, 39:21, 40:25, 42:9, 43:20, 46:5, 47:6, 47:7, 50:11
**cases** [28] - 4:4, 5:7, 5:8, 6:23, 7:24, 9:19, 9:22, 9:24, 13:5, 13:15, 14:13, 15:4, 15:6, 17:9, 19:11, 28:15, 28:20, 30:7, 32:10, 32:14, 33:17, 34:18, 34:20, 35:5,

40:1, 44:12
**cat** [1] - 28:21
**cat-and-mouse** [1] - 28:21
**cell** [1] - 38:7
**certain** [1] - 46:25
**Certainly** [1] - 41:17
**certainly** [22] - 8:22, 9:17, 10:9, 10:19, 11:8, 11:18, 12:15, 12:19, 14:12, 14:13, 15:3, 15:6, 17:2, 20:4, 20:17, 21:5, 24:10, 32:8, 35:16, 38:3, 42:25, 49:21
**CERTIFICATE** [1] - 52:1
**certify** [1] - 52:3
**chambers** [1] - 35:24
**chance** [2] - 37:15, 38:17
**change** [5] - 23:3, 45:11, 45:14, 45:17, 48:15
**changed** [2] - 23:4, 45:12
**changeover** [1] - 30:7
**changes** [1] - 44:13
**charge** [1] - 24:15
**charges** [1] - 7:1
**Charles** [1] - 1:14
**chief** [1] - 50:12
**Circuit** [3] - 19:9, 19:10, 37:2
**Circuit's** [1] - 45:3
**circumstance** [1] - 44:20
**circumstances** [1] - 6:1
**citizens** [1] - 8:16
**Civil** [1] - 2:4
**civil** [1] - 35:9
**classified** [2] - 40:3, 40:23
**clear** [9] - 10:23, 14:14, 14:17, 18:8, 28:6, 31:21, 33:10, 35:3, 36:16
**cleared** [5] - 6:18, 8:9, 15:8, 15:16, 15:21
**clearly** [1] - 14:15
**client** [5] - 31:23, 32:1, 32:24, 33:2, 33:5
**client's** [2] - 32:20, 33:3
**clock** [1] - 10:1
**Close** [1] - 22:15
**close** [4] - 9:5, 21:18, 22:14, 23:6
**cognizant** [8] - 8:23,

9:1, 10:9, 10:10, 10:15, 10:19, 43:1, 49:21
**colleagues** [6] - 28:19, 29:3, 29:24, 30:13, 40:14
**colleagues'** [3] - 28:15, 29:2, 29:14
**collection** [1] - 10:23
**collective** [1] - 23:15
**COLUMBIA** [1] - 1:1
**combatant** [8] - 5:24, 15:18, 15:23, 16:23, 18:11, 21:7, 45:13, 45:15
**combatants** [2] - 45:6, 45:7
**combination** [1] - 38:15
**comfortable** [1] - 46:16
**comfortably** [1] - 31:14
**coming** [1] - 36:25
**commencing** [1] - 24:7
**commentary** [1] - 28:4
**committee** [1] - 9:7
**Committee** [2] - 9:18, 12:6
**common** [2] - 20:6, 20:7
**competent** [1] - 15:3
**completely** [1] - 42:18
**completes** [1] - 41:19
**compliance** [2] - 3:1, 3:8
**complicated** [2] - 11:7, 43:15
**comply** [3] - 5:15, 6:10, 6:15
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concede** [2] - 25:20, 32:2
**conceded** [1] - 25:22
**conceding** [3] - 12:4, 16:1, 45:1
**concern** [6] - 18:3, 22:18, 27:1, 36:15, 36:24, 44:16
**concerned** [7] - 8:5, 23:1, 23:21, 24:19, 32:9, 33:8, 36:13
**concerns** [12] - 8:2, 8:20, 10:11, 11:17, 17:12, 17:13, 18:5, 18:6, 23:17, 33:1, 36:23, 46:6

**concession** [2] - 45:9, 46:24
**concluded** [1] - 50:20
**condition** [2] - 45:20, 48:10
**condition-of-confinement** [1] - 48:10
**conditions** [5] - 45:4, 45:8, 45:11, 45:15, 45:18
**conduct** [2] - 7:6, 9:23
**conducted** [1] - 10:11
**confer** [2] - 29:23, 30:8
**confidence** [5] - 6:14, 14:9, 14:11, 15:13, 15:14
**confinement** [7] - 45:5, 45:8, 45:11, 45:15, 45:18, 45:21, 48:10
**Connolly** [2] - 2:15, 40:20
**CONNOLLY** [29] - 1:12, 2:14, 31:18, 32:13, 34:8, 34:14, 34:21, 35:2, 35:23, 36:9, 36:14, 36:21, 37:12, 37:17, 37:20, 38:3, 38:8, 38:12, 39:4, 39:7, 39:13, 39:17, 39:22, 40:10, 47:3, 48:17, 49:1, 50:4, 50:18
**consent** [1] - 36:22
**consider** [1] - 26:23
**consideration** [3] - 30:24, 37:4, 41:12
**considered** [2] - 41:4, 41:6
**considering** [1] - 45:4
**consistent** [11] - 9:2, 16:3, 17:9, 20:21, 21:5, 23:10, 23:18, 27:9, 27:16, 28:2, 30:10
**Constitution** [1] - 1:23
**constructive** [1] - 21:13
**contempt** [2] - 3:3, 5:11
**context** [2] - 11:13, 25:12
**continue** [4] - 5:23, 8:4, 8:13, 23:10
**continued** [1] - 35:1
**continuing** [1] - 38:24
**convened** [1] - 5:13
**conversations** [1] -

10:18
**convince** [1] - 15:11
**Correct** [1] - 41:10
**correct** [6] - 15:24, 16:8, 25:10, 34:13, 37:20, 52:3
**counsel** [34] - 2:6, 2:11, 2:13, 2:18, 3:8, 3:10, 3:15, 3:16, 4:3, 4:8, 5:25, 6:5, 21:14, 22:21, 26:7, 28:11, 28:25, 29:9, 29:25, 31:10, 33:12, 35:14, 39:24, 40:7, 42:14, 44:10, 47:9, 47:24, 48:4, 48:20, 49:12, 49:16
**Counsel** [5] - 3:20, 18:6, 20:2, 27:2, 36:12
**countries** [3] - 13:3, 15:10, 16:13
**country** [14] - 7:16, 7:17, 8:4, 11:23, 12:11, 14:1, 14:21, 16:6, 16:10, 16:11, 17:20, 31:16, 45:2, 45:9
**couple** [1] - 36:23
**course** [7] - 17:11, 21:12, 24:9, 31:25, 39:17, 39:18, 39:20
**COURT** [131] - 1:1, 2:10, 2:13, 2:17, 8:25, 9:11, 9:13, 9:22, 11:20, 12:2, 12:8, 12:14, 12:16, 12:20, 14:2, 14:6, 14:9, 14:17, 15:12, 15:16, 15:21, 16:8, 16:11, 16:15, 16:21, 17:5, 17:13, 17:16, 17:21, 18:6, 18:19, 18:22, 18:25, 19:4, 19:7, 19:18, 20:7, 20:14, 20:20, 21:4, 21:11, 21:17, 22:15, 22:24, 23:4, 23:7, 23:22, 24:14, 24:21, 24:23, 25:3, 25:7, 25:13, 25:16, 25:22, 26:2, 26:5, 26:10, 26:14, 26:20, 27:2, 27:14, 27:18, 27:23, 28:4, 28:14, 28:17, 28:19, 28:21, 29:1, 29:7, 29:16, 29:21, 29:25, 30:4, 30:12, 31:1, 31:4, 31:7, 31:9, 32:8, 34:5,

34:7, 34:12, 34:16, 34:22, 35:18, 36:4, 36:12, 36:16, 37:6, 37:14, 37:19, 37:21, 38:5, 38:10, 38:15, 39:6, 39:12, 39:15, 39:21, 40:8, 40:12, 40:16, 41:3, 41:10, 41:20, 42:4, 42:6, 42:12, 42:20, 43:5, 43:9, 44:2, 44:10, 46:13, 46:18, 46:24, 47:6, 47:11, 47:16, 47:24, 48:2, 48:19, 49:7, 49:11, 50:1, 50:7, 50:9, 50:15, 50:19

**court** [15] - 7:13, 7:23, 8:5, 8:12, 13:21, 19:8, 21:21, 31:13, 35:20, 35:25, 36:20, 36:25, 42:10, 47:21, 48:24

**Court** [61] - 1:21, 1:22, 2:19, 2:22, 3:8, 3:21, 3:25, 4:6, 4:7, 4:12, 4:14, 4:20, 4:24, 5:5, 5:10, 5:22, 6:1, 6:7, 6:13, 6:15, 6:16, 6:21, 6:22, 7:4, 7:8, 10:12, 10:16, 10:17, 11:23, 11:24, 12:9, 12:17, 13:10, 13:20, 13:25, 14:13, 14:15, 16:7, 20:11, 23:16, 23:18, 24:9, 27:12, 29:10, 29:17, 30:20, 30:21, 32:5, 32:19, 34:9, 34:22, 39:10, 39:22, 41:13, 41:21, 44:4, 44:22, 46:4, 50:6, 52:2

**court's** [1] - 32:16
**Court's** [18] - 3:10, 4:11, 4:23, 5:3, 5:12, 5:13, 5:15, 6:10, 7:12, 7:22, 8:20, 8:23, 33:9, 35:13, 37:3, 41:12, 44:16

**Courthouse** [1] - 1:22
**courtroom** [2] - 36:5, 46:8
**COURTROOM** [3] - 2:2, 44:4, 44:7
**CR** [1] - 1:4
**creative** [1] - 21:8
**credibility** [10] - 4:18, 25:25, 26:2, 41:23, 42:1, 42:5, 42:8, 42:19, 42:25, 43:9

---

**critical** [1] - 6:8
**cross** [4] - 5:19, 41:4, 41:7, 41:12
**cross-motions** [3] - 5:19, 41:4, 41:7
**Cuba** [1] - 20:25
**cumulative** [3] - 42:21, 43:3, 43:5
**cumulative-type** [1] - 43:3
**custody** [1] - 10:2
**customary** [1] - 7:15

## D

**D.C** [5] - 1:6, 1:20, 1:23, 21:1, 37:2
**date** [1] - 34:11
**days** [20] - 7:8, 7:9, 7:16, 8:6, 19:1, 20:10, 20:13, 24:4, 33:13, 34:1, 34:9, 34:12, 37:15, 37:18, 37:23, 38:14, 38:17, 47:22, 49:11, 49:23
**deal** [2] - 9:19, 23:22
**dealing** [1] - 22:4
**decide** [1] - 19:11
**decided** [3] - 12:6, 24:4, 43:19
**decides** [1] - 20:11
**decision** [4] - 6:22, 9:16, 10:3, 10:17
**decisions** [1] - 10:4
**declarant** [1] - 44:19
**declaration** [1] - 4:14
**declarations** [2] - 6:12, 15:4
**defend** [1] - 40:8
**Defendants** [1] - 1:7
**Defense** [3] - 24:2, 24:14, 38:24
**delay** [3] - 8:13, 8:18, 13:14
**delaying** [1] - 49:21
**deliberations** [1] - 35:14
**deny** [2] - 36:17, 36:18
**Department** [17] - 1:18, 7:18, 9:23, 9:25, 11:17, 15:9, 24:2, 24:11, 24:14, 29:21, 33:4, 33:11, 35:21, 38:23, 49:17, 49:19
**deprivation** [1] - 8:5
**deprived** [1] - 38:10
**DEPUTY** [3] - 2:2, 44:4, 44:7

---

**details** [1] - 30:3
**detain** [2] - 12:4, 33:21
**detained** [6] - 5:23, 7:4, 7:21, 14:23, 16:8, 38:5
**detainee** [3] - 3:12, 7:2, 8:11
**detainee's** [1] - 9:20
**detainees** [8] - 10:22, 11:7, 11:12, 12:6, 13:24, 13:25, 15:11, 33:7
**detention** [4] - 4:17, 4:19, 6:4, 6:25
**determent** [1] - 8:15
**determination** [8] - 2:21, 5:21, 6:17, 6:18, 8:10, 10:12, 13:16, 18:2
**differently** [1] - 32:5
**difficulties** [1] - 24:11
**diligent** [1] - 6:6
**diligently** [1] - 11:19
**diplomacy** [2] - 20:22, 21:24
**diplomat** [1] - 17:23
**diplomates** [2] - 13:2, 17:23
**diplomatic** [19] - 6:20, 7:7, 7:25, 8:1, 11:5, 13:1, 17:1, 17:18, 17:25, 18:14, 19:13, 19:24, 20:19, 23:9, 24:16, 31:12, 32:11, 36:2, 37:11
**diplomats** [3] - 13:3, 17:21, 21:22
**direct** [1] - 29:1
**directed** [2] - 3:25, 33:6
**directly** [1] - 46:22
**disagree** [1] - 50:1
**discharged** [2] - 19:10, 31:15
**disclose** [1] - 29:8
**disclosed** [8] - 22:7, 28:1, 28:8, 28:11, 29:9, 29:19, 33:22, 43:1
**disclosure** [1] - 6:9
**disclosures** [1] - 27:14
**discover** [2] - 6:2, 6:8
**discovered** [1] - 3:9
**discovery** [5] - 3:2, 3:8, 41:18, 42:16, 42:24
**discuss** [3] - 2:23, 5:13, 49:17

---

**discussing** [2] - 22:16, 49:14
**discussion** [4] - 4:1, 5:4, 5:12, 49:21
**displeased** [1] - 48:7
**disputes** [2] - 7:3, 25:10, 40:24
**disputing** [1] - 25:17
**dissatisfied** [3] - 33:24, 33:25, 34:9
**distinctly** [1] - 42:3
**distributed** [1] - 27:11
**distribution** [1] - 29:6
**DISTRICT** [3] - 1:1, 1:1, 1:10
**district** [1] - 45:7
**disturbed** [1] - 24:19
**disturbing** [1] - 6:23
**document** [40] - 3:15, 3:20, 3:21, 4:13, 4:22, 5:1, 5:2, 5:7, 22:7, 25:1, 25:3, 25:4, 25:5, 25:14, 25:15, 25:24, 26:11, 26:20, 27:3, 27:4, 27:20, 27:24, 28:10, 28:14, 29:3, 29:24, 30:14, 30:21, 30:22, 39:19, 39:24, 40:4, 41:5, 41:11, 41:18, 42:3, 42:12, 42:16, 42:17, 44:21
**documents** [7] - 4:1, 5:2, 26:9, 27:11, 28:12, 42:6, 43:1
**Donald** [1] - 2:4
**done** [8] - 12:18, 12:21, 12:24, 29:17, 31:19, 31:20, 37:3, 46:11
**door** [1] - 20:25
**doors** [1] - 11:14
**doubt** [2] - 19:25, 25:24
**down** [8] - 10:6, 15:5, 21:19, 31:13, 33:16, 34:10, 49:16, 49:25
**Dr** [32] - 2:21, 3:6, 3:9, 3:11, 3:14, 3:15, 4:8, 5:22, 6:5, 6:6, 6:18, 6:22, 7:2, 7:13, 8:3, 8:8, 8:12, 9:8, 11:22, 12:11, 16:2, 18:15, 19:16, 20:23, 21:15, 22:19, 36:13, 41:14, 43:13, 45:1, 45:9
**draconian** [1] - 38:6
**draft** [4] - 44:12, 44:13, 44:14, 48:13
**drafted** [2] - 32:3, 32:4

---

**drag** [1] - 7:23
**dramatic** [1] - 41:23
**drink** [1] - 17:22
**dual** [1] - 16:15
**due** [3] - 6:3, 7:21, 38:10

## E

**e-mail** [4] - 44:11, 44:14, 44:15, 48:14, 48:15
**effect** [1] - 35:16
**effective** [2] - 21:18, 21:19
**effort** [5] - 7:11, 7:22, 8:23, 11:5, 33:5
**efforts** [10] - 6:6, 9:6, 12:10, 17:3, 19:24, 21:24, 24:12, 33:25, 34:1, 46:14
**either** [5] - 19:6, 20:20, 36:5, 42:17, 46:19
**eleventh** [2] - 7:14, 7:20
**elucidate** [1] - 24:13
**embark** [2] - 17:25, 19:13
**embarks** [1] - 7:25
**EMMET** [1] - 1:9
**emphasize** [2] - 11:10, 23:6
**End** [4] - 4:19, 5:18, 5:24, 7:7
**end** [10] - 2:24, 3:19, 4:2, 5:1, 6:19, 7:1, 16:19, 18:16, 22:22, 31:8
**endeavor** [1] - 10:14
**ending** [1] - 37:10
**enemy** [10] - 5:23, 15:18, 15:23, 16:23, 18:11, 21:7, 45:6, 45:7, 45:13, 45:15
**enforce** [2] - 21:9, 21:11
**engage** [1] - 11:14
**engages** [1] - 11:6
**English** [1] - 28:6
**enlist** [1] - 13:2
**ensure** [3] - 7:4, 10:25, 12:17
**entire** [4] - 5:12, 5:17, 26:19, 42:23
**entitled** [2] - 3:16, 52:4
**especially** [2] - 7:20, 29:11

**ESQ** [5] - 1:12, 1:13, 1:17, 1:17, 1:18
**essentially** [2] - 41:4, 45:1
**Essentially** [1] - 15:16
**established** [1] - 27:10
**et** [3] - 1:3, 1:6, 2:5
**etcetera** [1] - 47:17
**eternal** [1] - 20:2
**eve** [1] - 18:7
**event** [3] - 34:8, 38:12, 40:10
**events** [1] - 43:12
**evidence** [34] - 4:15, 4:17, 4:22, 4:24, 5:8, 5:16, 5:25, 6:8, 6:11, 6:24, 13:17, 15:18, 15:22, 16:22, 18:10, 21:7, 22:5, 22:6, 24:18, 25:10, 25:17, 26:16, 27:24, 28:6, 29:12, 29:19, 30:16, 33:22, 39:12, 41:22, 43:7, 44:17, 48:8
**ex** [2] - 39:14, 47:10
**exactly** [2] - 24:1, 47:7
**examiners** [1] - 15:5
**exculpatory** [34] - 3:5, 3:11, 4:15, 4:22, 4:24, 5:8, 5:16, 5:25, 6:11, 22:5, 22:6, 22:8, 24:18, 25:10, 25:17, 25:24, 26:5, 26:16, 27:5, 27:18, 27:24, 28:5, 28:22, 29:12, 29:19, 30:16, 31:5, 39:12, 39:15, 39:18, 41:22, 44:17, 48:6, 48:8
**excuse** [1] - 49:3
**executive** [3] - 9:4, 16:3, 35:15
**Executive** [2] - 9:18, 12:5
**exists** [1] - 29:3
**expects** [1] - 7:9
**expedited** [1] - 43:20
**explain** [2] - 25:12, 26:4
**explaining** [1] - 44:20
**explanation** [2] - 4:21, 4:25
**expressing** [1] - 32:19
**extend** [2] - 8:6, 44:18
**extended** [1] - 8:18
**extent** [2] - 48:3, 48:16
**extremely** [3] - 36:14, 48:7, 48:8

## F

**face** [4] - 6:9, 24:1, 39:11
**face-to-face** [1] - 24:1
**faced** [1] - 24:12
**facilitating** [1] - 31:25
**fact** [8] - 3:13, 4:5, 4:18, 5:6, 9:1, 34:3, 35:10, 36:5, 41:17
**facts** [1] - 43:24
**factual** [3] - 4:16, 21:6, 40:24
**failed** [1] - 21:24
**failure** [4] - 5:15, 5:15
**failures** [4] - 5:15, 6:10, 22:4, 22:5
**fair** [14] - 7:13, 7:22, 8:5, 8:12, 17:10, 19:8, 20:12, 20:21, 21:5, 21:20, 31:13, 36:20, 37:8
**fairly** - 7:15
**Fairness** [1] - 20:14
**fairness** [3] - 20:14, 20:16, 23:10
**false** [1] - 34:19
**fe** [4] - 13:20, 14:12, 23:20, 36:25, 40:7
**feasible** [1] - 14:21
**federal** [2] - 9:6, 10:5
**fervor** [1] - 33:7
**few** [2] - 2:17, 33:13
**fewer** [1] - 6:12
**fighting** [1] - 22:3
**figure** [2] - 24:16, 43:24
**file** [8] - 23:24, 26:19, 29:2, 37:25, 44:12, 44:22, 44:23, 47:12
**File** [1] - 46:19
**filed** [6] - 35:12, 36:17, 37:4, 38:16, 38:18, 39:17
**filing** [4] - 35:17, 36:10, 40:3, 48:25
**filings** [1] - 26:24
**finally** [1] - 6:24
**Finally** [1] - 5:3
**fine** [14] - 16:17, 17:23, 17:25, 18:1, 21:25, 22:2, 25:9, 39:1, 47:11, 47:24, 50:2, 50:4, 50:9
**first** [11] - 8:22, 9:21, 11:1, 26:14, 31:18, 32:22, 39:4, 41:2, 41:4, 41:6, 43:17
**First** [2] - 4:13, 27:5

**five** [2] - 44:14, 48:14
**focus** [1] - 12:23
**focused** [2] - 4:2, 41:21
**follow** [3] - 12:9, 13:8, 13:9
**follow-up** - 13:9
**followed** [1] - 38:16
**following** [4] - 15:15, 15:20, 38:17, 39:23
**FOR** [1] - 1:1
**foregoing** - 52:3
**foreign** [1] - 16:4
**foreseen** [1] - 36:3
**forget** [1] - 24:3
**forth** [1] - 37:1
**forthwith** [2] - 13:18, 29:17
**Fortunately** [1] - 6:5
**forward** [3] - 5:21, 31:11, 43:21
**four** [4] - 6:12, 32:14, 32:22, 48:12
**fourteen** [1] - 37:18
**fractured** [1] - 11:16
**frame** [2] - 42:7, 43:20
**frankly** [5] - 8:17, 22:9, 34:14, 37:3, 39:25
**free** [1] - 21:2
**Friday** [7] - 10:18, 15:9, 31:24, 32:24, 44:17, 44:22
**front** [1] - 42:16
**fruit** [3] - 22:21, 22:24, 35:4
**frustrating** [5] - 11:10, 11:11, 34:18, 35:22, 36:19
**frustration** [2] - 20:19, 35:3
**full** [1] - 33:7
**fully** [2] - 33:6, 34:3
**fundamentally** [1] - 6:4

## G

**game** [1] - 28:21
**games** [1] - 10:21
**general** [1] - 32:19
**generally** [1] - 40:20
**gentlemen** [1] - 48:23
**GEORGE** [1] - 1:6
**germane** [2] - 46:22, 47:19
**given** [4] - 11:2, 20:5, 38:25, 43:11
**goal** [4] - 15:7, 20:6,

20:7, 22:18
**government** [76] - 2:9, 3:3, 3:14, 3:15, 3:18, 3:22, 3:23, 4:1, 4:4, 4:6, 4:13, 4:14, 4:21, 4:25, 5:10, 5:14, 5:18, 5:20, 6:9, 6:13, 6:14, 6:19, 7:6, 7:25, 8:14, 8:25, 11:6, 11:15, 11:18, 11:21, 12:10, 13:8, 14:20, 15:17, 15:21, 16:16, 17:19, 18:9, 18:13, 19:9, 19:12, 20:15, 21:21, 22:3, 22:4, 22:25, 23:20, 25:8, 27:3, 27:6, 29:2, 30:17, 30:19, 31:24, 31:25, 32:21, 32:23, 33:10, 33:12, 33:20, 34:23, 34:24, 35:10, 35:14, 36:9, 41:1, 41:6, 44:11, 45:1, 45:23, 45:24, 46:2, 46:4, 46:6, 50:5
**Government** [1] - 1:17
**government's** [19] - 2:20, 3:1, 3:7, 3:13, 3:20, 4:11, 4:20, 6:18, 6:21, 11:22, 27:7, 30:20, 36:22, 36:24, 41:24, 44:25, 45:19, 46:22, 46:24
**grant** [2] - 13:10, 38:13
**granted** [4] - 3:25, 40:11, 48:17, 48:20
**grateful** [2] - 31:19, 31:25
**greatly** [1] - 33:2
**Guantanamo** [24] - 2:22, 7:3, 7:6, 8:14, 8:19, 9:5, 9:10, 10:1, 11:4, 14:23, 15:2, 15:8, 15:22, 19:1, 19:5, 20:18, 20:24, 22:19, 22:23, 30:7, 32:11, 32:16, 38:7, 43:14
**guess** [3] - 13:4, 19:24, 32:11
**gun** [1] - 43:6
**guys** [1] - 48:22

## H

**habeas** [3] - 4:4, 5:7, 14:15
**halt** [1] - 18:12

**hand** [1] - 6:21
**handwriting** [1] - 17:8
**Hang** [1] - 34:5
**happy** [1] - 50:4
**hard** [5] - 32:8, 34:25, 36:17, 37:6, 47:13
**hard-pressed** [1] - 36:17
**hear** [6] - 7:9, 24:10, 24:11, 31:10, 33:12, 48:19
**heard** [4] - 21:14, 33:10, 35:3, 41:2
**hearing** [19] - 2:22, 2:24, 3:24, 4:2, 4:12, 5:3, 5:4, 5:13, 5:19, 25:23, 33:18, 34:2, 34:11, 35:6, 35:23, 38:16, 39:10, 39:24, 49:13
**HEARING** [1] - 1:9
**hearings** [4] - 23:25, 24:3, 24:17, 39:8
**heart** [2] - 35:10, 35:11
**heck** [1] - 22:2
**held** [5] - 3:3, 5:11, 13:25, 14:3, 18:10
**Henry** [2] - 4:6, 25:22
**Henry's** [1] - 4:14
**hide** [2] - 5:24, 5:25
**hiding** [1] - 48:23
**high** [7] - 6:3, 22:8, 24:1, 38:21, 38:22, 38:23, 44:18
**high-level** [2] - 24:1, 38:21, 38:23
**highest** [2] - 6:13, 35:20
**highly** [3] - 3:10, 47:18, 48:11
**hit** [1] - 32:12
**hold** [5] - 13:17, 14:4, 16:2, 16:22, 21:7
**honestly** [1] - 32:6
**Honor** [56] - 2:8, 2:14, 8:21, 11:8, 12:15, 14:5, 15:1, 15:4, 17:2, 17:11, 17:12, 18:4, 20:4, 20:17, 22:13, 22:16, 22:17, 23:2, 24:8, 24:11, 24:20, 25:6, 25:21, 28:1, 29:15, 30:2, 30:6, 31:18, 32:1, 32:13, 33:9, 33:11, 33:24, 34:2, 34:3, 35:2, 35:6, 35:17, 35:25, 36:14, 37:17, 38:4, 38:12, 40:3,

40:6, 40:15, 41:1, 42:23, 43:3, 43:12, 43:18, 46:7, 46:9, 47:3, 49:1, 49:24
**Honor's** [7] - 10:10, 23:19, 28:24, 30:10, 35:16, 39:20
**HONORABLE** [1] - 1:9
**Honorable** [1] - 44:4
**Hope** [1] - 20:1
**hope** [3] - 21:2, 34:19, 38:12
**hoped** [1] - 32:5
**hopeful** [1] - 32:1
**hoping** [1] - 36:15
**horror** [1] - 8:16
**hospital** [4] - 14:22, 14:24, 19:19, 19:20
**hour** [2] - 7:15, 7:20
**hours** [1] - 45:12
**hundred** [1] - 9:19
**Huvelle** [3] - 46:7, 46:11, 46:16
**Huvelle's** [4] - 46:1, 47:17, 47:21, 48:5

## I

**icing** [1] - 42:13
**idea** [1] - 47:1
**identify** [1] - 2:6
**ill** [4] - 7:2, 14:22, 22:1
**imagination** [1] - 21:8
**immediate** [2] - 34:11, 39:10
**immediately** [1] - 35:8
**impact** [1] - 41:23
**impediments** [1] - 45:4
**important** [4] - 9:20, 9:24, 10:2, 13:22
**in-camera** [1] - 39:1
**inadvertent** [4] - 3:19, 6:9, 27:10, 27:14
**inadvertently** [12] - 5:1, 5:18, 26:11, 26:15, 27:3, 27:6, 27:19, 28:1, 28:8, 29:9, 30:17, 44:17
**inadvertently-released** [1] - 44:17
**incarcerated** [1] - 38:2
**incarcerating** [1] - 22:9
**incidentally** [1] - 31:22
**inclined** [1] - 17:24
**include** [1] - 6:3
**included** [1] - 27:21

**includes** [1] - 26:8
**including** [2] - 5:15, 49:16
**incremental** [1] - 20:5
**indeed** [8] - 6:3, 8:2, 15:23, 16:22, 23:12, 22:25, 33:25, 45:6
**indefinite** [5] - 6:4, 8:13, 8:18, 23:9, 23:11
**indefinitely** [2] - 7:24, 17:7
**independent** [1] - 15:5
**indicate** [1] - 31:23
**indicated** [1] - 50:5
**individual's** [1] - 26:19
**individuals** [1] - 10:24
**inform** [2] - 29:3, 46:4
**information** [23] - 3:5, 4:3, 4:16, 5:4, 5:20, 6:2, 9:18, 10:24, 26:7, 27:18, 28:9, 38:25, 40:24, 42:1, 42:2, 42:3, 42:8, 42:15, 42:17, 42:18, 43:2, 43:3
**informed** [3] - 3:8, 3:15, 4:6, 10:16, 30:14, 47:21
**initiate** [1] - 6:19
**instance** [1] - 43:17
**instead** [1] - 3:11
**insufficient** [2] - 13:17, 21:7
**intend** [1] - 38:20
**intended** [1] - 3:14
**intention** [1] - 11:22
**intents** [1] - 10:14
**interest** [3] - 22:25, 23:16, 32:20
**interested** [1] - 44:24
**interests** [2] - 16:4
**interfere** [1] - 16:17
**internal** [1] - 35:14
**involved** [5] - 29:24, 30:5, 32:13, 50:6, 50:7
**island** [1] - 21:3
**ISN** [8] - 3:12, 3:17, 3:23, 3:24, 4:5, 5:6, 25:25, 41:7
**issue** [12] - 2:24, 8:14, 15:25, 22:14, 24:25, 25:1, 26:25, 39:12, 45:21, 48:8, 48:10, 48:13
**issued** [3] - 9:4, 29:12, 32:17
**issues** [6] - 24:12,

24:13, 28:13, 46:25, 48:23, 49:18
**itself** [1] - 25:23

## J

**Jack** [1] - 2:12
**JACQUELINE** [3] - 1:21, 52:2, 52:5
**jail** [3] - 20:15, 21:1, 38:6
**January** [2] - 3:4, 23:2
**Japanese** [1] - 8:15
**job** [1] - 18:2
**jobs** [1] - 48:21
**John** [1] - 2:14
**JOHN** [2] - 1:12, 1:18
**joint** [11] - 2:19, 11:21, 20:8, 32:3, 36:10, 36:17, 36:18, 37:4, 40:11, 43:24, 48:25
**Judge** [12] - 12:22, 13:1, 28:5, 30:21, 39:2, 45:25, 46:7, 46:11, 46:16, 47:17, 47:21, 48:5
**judge** [4] - 9:14, 10:5, 19:11, 30:23
**JUDGE** [1] - 1:10
**judge's** [1] - 30:15
**judges** [2] - 42:10, 45:7
**Judges** [2] - 29:8, 34:24
**judgment** [6] - 5:19, 33:18, 39:11, 40:22, 43:10, 43:11
**judicial** [7] - 8:11, 21:8, 22:20, 31:15, 32:6, 36:1, 43:21
**juncture** [1] - 14:19
**juris** [1] - 8:17
**justice** [8] - 17:6, 17:10, 20:22, 21:6, 21:24, 41:11, 41:16, 41:21
**Justice** [8] - 1:18, 7:19, 9:23, 9:25, 20:7, 29:21, 35:21
**justify** [2] - 4:19, 6:25

## K

**keep** [3] - 22:16, 38:20, 50:5
**kind** [1] - 43:24
**knowing** [2] - 31:14, 41:22

**knows** [5] - 15:2, 22:8, 25:21, 30:2, 40:3

## L

**language** [2] - 4:20, 30:17
**languishing** [1] - 32:11, 32:16
**largely** [1] - 42:18
**last** [6] - 25:23, 31:24, 32:24, 33:17, 35:5, 35:6
**law** [6] - 14:1, 16:23, 27:14, 37:2, 38:11, 48:24
**lawful** [3] - 12:4, 14:3, 16:2
**laws** [1] - 16:14
**least** [7] - 8:10, 19:10, 23:20, 31:14, 33:13, 40:2, 40:22
**leave** [1] - 45:16
**left** [1] - 36:4
**legal** [1] - 41:1
**leisure** [1] - 21:21
**length** [1] - 43:14
**lengthy** [1] - 43:15
**less** [2] - 14:14, 46:12
**level** [6] - 8:11, 24:1, 38:21, 38:22, 38:23, 44:19
**levels** [1] - 6:13
**liberty** [1] - 22:25
**lightly** [1] - 7:20
**limbo** [1] - 7:5
**limits** [1] - 13:23
**line** [2] - 20:25, 38:6
**linger** [1] - 7:6
**litigant** [1] - 9:14
**litigants** [1] - 10:13
**live** [1] - 43:16
**LLC** [1] - 1:13
**locked** [1] - 14:6
**LOHRER** [1] - 1:18
**Lohrer** [1] - 2:12
**look** [6] - 13:4, 20:16, 25:11, 25:13, 26:21, 49:7
**Look** [5] - 34:16, 36:14, 47:11, 48:21, 48:22
**loosely** [1] - 5:25
**loses** [1] - 19:9
**loud** [1] - 35:3
**luck** [2] - 6:7, 21:2

## M

**machine** [1] - 1:24
**mail** [5] - 44:11, 44:14, 44:15, 48:14, 48:15
**maintains** [1] - 27:3
**man** [11] - 7:21, 9:1, 14:22, 16:22, 18:10, 19:21, 21:7, 22:1, 31:16, 37:7, 38:1
**man's** [4] - 8:18, 19:18, 20:15, 22:25
**manipulate** [1] - 10:21
**manner** [5] - 10:4, 12:18, 12:21, 19:12, 37:9
**March** [4] - 2:25, 3:24, 5:3, 5:4
**marshaled** [1] - 43:22
**Maryland** [1] - 1:15
**Massachusetts** [1] - 1:19
**materially** [2] - 4:16, 4:18
**matter** [12] - 7:9, 8:22, 8:24, 10:21, 11:19, 13:9, 16:23, 23:15, 30:9, 43:17, 49:15, 52:4
**matters** [5] - 7:12, 12:23, 15:2, 49:8, 49:9
**meals** [1] - 21:2
**mean** [8] - 8:14, 14:19, 14:20, 21:13, 36:7, 40:6, 49:5, 49:7
**means** [5] - 6:2, 14:2, 17:1
**meant** [1] - 49:1
**mechanism** [2] - 17:2, 22:17
**mediation** [1] - 35:10
**medical** [7] - 3:9, 14:24, 15:2, 15:5, 15:6, 26:19, 28:2
**memory** [1] - 47:23
**men** [2] - 7:4, 10:2
**merits** [11] - 5:21, 6:16, 8:10, 9:15, 10:6, 10:11, 13:16, 18:2, 31:14, 43:16, 43:22
**merits-type** [1] - 43:22
**might** [3] - 33:8, 34:9, 42:22
**mildly** [1] - 24:21
**mind** [1] - 37:21
**mindful** [1] - 46:20
**minimum** [1] - 18:4

**minute** [3] - 24:25, 25:16, 44:2
**minutes** [2] - 2:17, 10:16
**miscarriage** [3] - 41:11, 41:15, 41:21
**modification** [1] - 23:19
**modified** [1] - 49:5
**moment** [1] - 18:17
**months** [7] - 8:2, 13:14, 17:21, 18:9, 19:13, 19:24, 20:9
**Moreover** [1] - 4:24
**morning** [4] - 10:18, 31:23, 32:19, 33:10
**most** [5] - 7:4, 9:24, 21:13, 21:18, 21:19
**motion** [29] - 2:19, 2:23, 2:25, 3:7, 11:21, 13:11, 20:8, 20:11, 23:18, 24:4, 32:3, 33:18, 34:3, 34:12, 35:12, 35:17, 36:10, 36:17, 36:18, 37:4, 38:13, 39:10, 40:11, 40:22, 41:2, 43:10, 43:11, 48:25, 49:2
**Motion** [1] - 48:17
**motion-for-judgment** [2] - 43:10, 43:11
**motions** [5] - 5:19, 39:8, 41:4, 41:7, 41:13
**mouse** [1] - 28:21
**moved** [1] - 43:21
**moving** [3] - 5:21, 7:12, 18:5
**MR** [129] - 2:8, 2:11, 2:14, 8:21, 9:2, 9:12, 9:17, 10:9, 12:1, 12:3, 12:13, 12:15, 12:19, 13:19, 14:5, 14:7, 14:11, 15:1, 15:14, 15:19, 15:25, 16:9, 16:13, 16:19, 17:2, 17:11, 17:14, 17:17, 18:3, 18:17, 18:21, 18:23, 19:2, 19:6, 19:15, 20:3, 20:10, 20:17, 20:21, 21:10, 21:12, 22:13, 22:16, 23:2, 23:5, 23:11, 24:8, 24:20, 24:22, 24:24, 25:5, 25:11, 25:15, 25:19, 26:1, 26:4, 26:6, 26:13, 26:18, 26:23, 27:9, 27:16, 27:20,

27:25, 28:9, 28:16, 28:18, 28:20, 28:23, 29:5, 29:15, 29:20, 29:23, 30:2, 30:5, 30:25, 31:3, 31:6, 31:8, 31:18, 32:13, 34:8, 34:14, 34:21, 35:2, 35:23, 36:9, 36:14, 36:21, 37:12, 37:17, 37:20, 38:3, 38:8, 38:12, 39:4, 39:7, 39:13, 39:17, 39:22, 40:10, 40:15, 40:19, 41:9, 41:17, 41:25, 42:5, 42:7, 42:15, 42:22, 43:8, 43:10, 46:7, 46:15, 46:23, 47:3, 47:5, 47:7, 47:15, 47:20, 48:1, 48:17, 49:1, 49:10, 49:13, 50:4, 50:8, 50:14, 50:18
**multiple** [1] - 15:10
**MURPHY** [1] - 1:13
**Murphy** [2] - 1:13, 2:15
**must** [3] - 6:22, 32:2, 48:12

# N

**N.W** [1] - 1:19
**national** [1] - 16:4
**nations** [3] - 11:7, 11:15
**naught** [1] - 7:23
**necessarily** [4] - 17:19, 18:24, 21:13, 26:18
**need** [4] - 27:23, 30:8, 40:16, 44:3
**needs** [1] - 20:11
**never** [4] - 29:11, 35:21, 35:22, 37:10
**never-ending** [1] - 37:10
**nevertheless** [1] - 28:7
**new** [5] - 10:24, 23:3, 23:7, 33:20, 33:21
**news** [1] - 31:23
**next** [2] - 22:22, 49:21
**night** [1] - 31:14
**Noncompliance** [1] - 34:22
**noncompliance** [1] - 35:1
**None** [2] - 51:5, 51:19
**nonstop** [1] - 10:3

**noon** [5] - 44:17, 44:23, 44:25, 45:20, 45:22
**note** [2] - 6:22, 23:20
**notes** [1] - 4:14
**nothing** [1] - 35:19
**notice** [7] - 29:2, 30:11, 30:13, 30:15, 44:12, 48:13, 48:14
**notion** [1] - 15:17
**notwithstanding** [2] - 28:5, 44:21
**number** [2] - 5:6, 30:3
**NW** [1] - 1:23

# O

**o'clock** [2] - 44:14, 48:14
**O'DONNELL** [1] - 1:17
**O'Donnell** [1] - 2:12
**oath** [1] - 21:23
**obligations** [1] - 6:15
**obviously** [4] - 9:20, 11:6, 15:9, 16:14
**Obviously** [1] - 23:14
**occurred** [1] - 5:13
**OF** [2] - 1:1, 1:9
**office** [1] - 9:4
**offices** [1] - 11:18
**Official** [2] - 1:22, 52:2
**officials** [2] - 6:12, 24:2
**Often** [2] - 11:16, 17:20
**once** [2] - 6:24, 40:4
**one** [26] - 3:13, 6:6, 6:21, 7:2, 10:1, 10:2, 11:1, 11:8, 14:12, 17:20, 25:9, 26:11, 27:2, 29:25, 30:13, 33:15, 33:17, 34:5, 34:8, 36:2, 37:7, 39:19, 41:23, 47:22, 49:5, 49:14
**one's** [1] - 21:17
**open** [2] - 11:13, 20:24
**opportunity** [2] - 32:22, 41:14
**option** [3] - 21:1, 43:10, 43:11
**Order** [2] - 9:18, 12:5
**order** [50] - 2:3, 3:2, 3:4, 3:10, 3:21, 4:10, 4:11, 4:23, 5:3, 5:14, 9:4, 10:10, 11:23, 11:25, 12:9, 12:17, 13:10, 13:18, 13:20,

13:25, 16:3, 16:7, 16:23, 24:25, 28:5, 28:6, 28:24, 29:17, 30:10, 30:15, 30:21, 34:4, 34:24, 39:20, 39:21, 39:25, 40:17, 44:8, 45:24, 46:1, 46:6, 46:21, 48:5, 49:4, 50:2, 50:8, 50:12
**ordered** [4] - 4:7, 12:11, 29:16, 32:15
**orders** [14] - 3:4, 3:8, 5:12, 5:15, 6:10, 6:11, 29:12, 34:22, 35:1, 35:13, 37:1, 44:22, 47:17, 49:3
**ordinary** [1] - 35:9
**origin** [6] - 7:17, 8:4, 11:23, 12:11, 14:21, 45:2
**Otherwise** [1] - 12:14
**otherwise** [1] - 12:14
**ought** [5] - 9:25, 19:19, 19:20, 33:13
**ourselves** [1] - 49:14
**outrageous** [6] - 6:4, 26:14, 26:15, 27:8
**outstanding** [1] - 11:24
**overnight** [1] - 13:12
**overseer** [2] - 17:5, 17:10
**oversight** [1] - 17:3
**own** [2] - 16:14, 33:20

# P

**p.m** [4] - 1:7, 44:6, 44:9, 50:20
**pace** [2] - 20:23, 32:12
**pages** [1] - 52:3
**papers** [2] - 40:23, 43:17
**paragraphs** [1] - 46:12
**part** [7] - 3:6, 5:13, 7:12, 8:13, 19:22, 32:17, 47:8
**parte** [1] - 47:10
**particular** [6] - 9:7, 25:20, 26:7, 27:13, 28:12, 42:1, 42:9, 42:10
**particularly** [2] - 6:1, 33:4
**parties** [15] - 6:16, 10:12, 13:24, 23:12, 23:16, 29:6, 37:15, 40:25, 42:24, 43:23,

45:3, 45:13, 45:16, 45:22, 49:20
**parties'** [2] - 2:19, 45:8
**party** [3] - 22:20, 35:1, 43:22
**past** [3] - 8:1, 23:1, 33:8
**pattern** [1] - 6:23
**pause** [1] - 34:6
**pay** [2] - 22:6
**penalty** [2] - 12:20, 44:19
**people** [6] - 9:25, 21:20, 22:10, 23:25, 32:10, 36:4
**perform** [1] - 43:22
**perhaps** [4] - 9:24, 34:1, 34:3, 35:24, 36:2
**period** [2] - 23:9, 37:22
**perjury** [1] - 44:20
**person** [2] - 38:23, 42:10, 44:19
**personal** [4] - 35:19, 35:22, 48:22
**personally** [1] - 48:25
**pertained** [1] - 3:11
**petitioner** [4] - 2:15, 31:19, 41:14, 45:5
**petitioner's** [19] - 2:25, 3:25, 4:2, 4:17, 4:19, 6:25, 11:1, 21:14, 26:7, 28:2, 28:11, 31:10, 42:14, 44:22, 46:3, 47:1, 47:9, 48:3, 49:16
**petitioners** [6] - 4:4, 23:14, 32:15, 42:9, 45:6, 49:15
**picture** [1] - 39:19, 39:23, 41:19
**place** [12] - 12:17, 13:23, 16:19, 17:3, 20:4, 21:15, 21:19, 21:20, 22:17, 23:6, 34:17, 40:17
**plain** [1] - 28:6
**Plaintiff** [1] - 1:12
**Plaintiffs** [1] - 1:4
**plan** [1] - 34:16
**planned** [1] - 16:18
**plans** [1] - 44:12
**play** [3] - 10:21, 18:4, 49:18
**pleadings** [2] - 4:10, 41:21
**pleased** [1] - 39:2
**ploy** [1] - 8:3

**point** [12] - 12:21, 15:12, 17:24, 20:1, 22:10, 24:6, 32:20, 34:25, 36:25, 39:4, 39:8, 42:14
**pointed** [1] - 43:3
**points** [2] - 32:1, 37:1
**policy** [2] - 16:4, 23:3
**portions** [2] - 46:21, 47:18
**position** [7] - 3:18, 4:25, 18:9, 25:19, 33:9, 33:20, 45:4
**positions** [1] - 10:25
**possibility** [1] - 35:7
**possible** [1] - 9:12
**posture** [2] - 22:3, 36:8
**potentially** [1] - 37:10
**power** [2] - 18:1, 19:14
**powerful** [1] - 43:7
**powerless** [1] - 45:7
**practically** [1] - 20:24
**precious** [2] - 7:17, 7:18
**precise** [2] - 27:2, 45:17
**preclude** [1] - 24:7
**precluded** [1] - 3:23
**predicate** [1] - 21:6
**predict** [1] - 16:10
**preface** [1] - 24:24
**preferable** [1] - 36:25
**preference** [1] - 49:23
**prejudice** [5] - 11:20, 11:24, 12:2, 13:11, 13:12
**prepared** [1] - 36:21
**presence** [1] - 9:14
**present** [3] - 6:24, 46:8, 49:24
**presided** [1] - 2:24
**President** [2] - 9:3, 10:23
**president** [1] - 9:8
**President's** [1] - 12:5
**presiding** [1] - 34:18
**pressed** [3] - 6:24, 32:8, 36:17
**pressured** [1] - 36:3
**previously** [3] - 5:5, 43:18, 44:21
**price** [1] - 22:6
**principal** [1] - 41:24
**prioritize** [1] - 10:1
**prioritizing** [1] - 9:19
**priority** [3] - 9:3, 11:2, 14:7

**prison** [2] - 11:13, 11:14
**private** [1] - 36:22
**privy** [1] - 35:13
**problem** [1] - 19:15
**problematic** [1] - 37:2
**problems** [1] - 17:6
**procedure** [1] - 33:16
**proceed** [5] - 16:15, 18:1, 23:17, 34:9, 40:22
**proceeding** [3] - 3:12, 32:12, 43:23
**Proceedings** [2] - 1:24, 50:20
**proceedings** [7] - 2:20, 11:21, 18:12, 34:6, 49:3, 50:13, 52:4
**process** [49] - 6:20, 7:7, 7:21, 7:25, 8:1, 8:11, 9:17, 10:7, 11:6, 11:19, 12:3, 12:14, 13:2, 14:10, 14:12, 15:13, 17:1, 17:14, 17:18, 17:19, 17:25, 18:4, 19:13, 20:3, 20:12, 20:18, 21:23, 22:21, 23:9, 23:17, 24:16, 27:9, 29:20, 30:6, 31:12, 32:11, 33:13, 34:10, 35:11, 36:20, 37:11, 38:10, 38:24, 39:3, 39:9, 40:21, 43:13, 43:25, 44:1
**produce** [12] - 3:5, 3:22, 4:1, 4:23, 5:2, 5:11, 5:16, 6:10, 22:5, 22:6, 28:5, 28:6
**produced** [26] - 1:24, 3:10, 3:16, 4:8, 4:22, 5:1, 5:7, 5:9, 26:12, 26:15, 26:16, 27:4, 27:5, 27:6, 27:24, 28:7, 28:14, 28:17, 28:23, 29:11, 29:12, 30:15, 30:18, 41:5, 42:8, 44:21
**production** [7] - 3:19, 27:21, 28:2, 29:24, 30:6, 30:16, 42:23
**productions** [1] - 28:10
**productive** [1] - 10:15
**progress** [4] - 7:10, 8:8, 19:23, 33:24
**prompt** [1] - 19:12
**prompted** [1] - 35:11

**proposed** [3] - 50:2, 50:8, 50:12
**protective** [1] - 4:9, 39:25
**provide** [1] - 30:11
**provided** [5] - 15:4, 28:13, 30:22, 40:2, 41:18
**prudence** [1] - 8:17
**prudent** [1] - 20:4
**public** [3] - 33:1, 40:5, 44:15
**purposes** [2] - 3:12, 10:14
**pursuant** [7] - 3:10, 4:9, 4:23, 5:11, 11:21, 30:15, 30:21
**put** [15] - 8:23, 11:9, 13:22, 14:17, 17:2, 18:12, 20:4, 21:1, 21:20, 22:17, 35:25, 40:17, 41:25, 50:11
**putting** [2] - 22:3, 24:21

**Q**

**query** [1] - 37:23
**questions** [5] - 4:13, 26:21, 38:18, 38:19, 40:17
**quickly** [1] - 34:4
**quite** [2] - 8:17, 22:9
**quote** [18] - 3:18, 3:19, 4:15, 4:20, 5:1, 5:17, 5:18, 5:23, 5:24, 6:19, 6:20, 7:1, 7:7, 30:17, 30:20

**R**

**raise** [2] - 27:12, 35:18
**raised** [2] - 24:25, 25:2
**raising** [1] - 36:19
**ranks** [1] - 8:15
**rather** [2] - 32:21, 36:2
**rationale** [3] - 45:6, 45:25, 46:4
**reach** [2] - 17:22, 34:3
**reading** [1] - 46:8
**really** [6] - 23:5, 24:18, 24:23, 36:11, 41:3, 43:6
**reason** [2] - 29:1, 33:19
**reasonable** [1] - 23:13
**reasons** [1] - 33:23

**recalendar** [2] - 20:11, 23:15
**receive** [1] - 47:22
**received** [2] - 2:19, 47:20
**receiving** [1] - 15:6
**recess** [4] - 40:12, 40:16, 44:3, 44:5
**Recess** [1] - 44:6
**recognition** [1] - 12:10
**recognize** [3] - 13:5, 13:23, 14:23
**recognized** [1] - 35:8
**recognizes** [1] - 14:3
**recognizing** [1] - 11:22
**recollection** [1] - 28:10
**recommended** [1] - 16:3
**reconsider** [1] - 33:19
**record** [10] - 2:7, 3:11, 5:20, 14:17, 25:23, 33:1, 40:5, 44:9, 44:15, 52:4
**records** [5] - 3:9, 3:17, 3:22, 4:7, 28:2
**reference** [1] - 26:24
**referring** [1] - 46:6
**reflect** [1] - 38:18
**reflection** [1] - 4:10
**refused** [1] - 5:2
**regard** [3] - 19:21, 23:13, 35:20
**regarding** [5] - 3:1, 3:7, 3:17, 4:13, 50:12
**related** [2] - 5:2, 6:20
**relatively** [1] - 43:19
**release** [6] - 6:19, 14:16, 15:22, 16:17, 16:24
**released** [9] - 11:3, 13:18, 13:20, 14:1, 16:25, 19:17, 27:19, 32:16, 44:17
**relevant** [3] - 5:25, 41:5, 48:11
**relied** [1] - 4:19
**relief** [2] - 3:1, 3:7
**rely** [2] - 3:14, 6:7
**relying** [3] - 3:24, 4:5, 41:7
**remain** [3] - 2:2, 32:16, 44:7
**remaining** [1] - 4:1
**remedy** [3] - 14:13, 14:14, 21:9, 21:11
**repatriate** [4] - 11:12,

14:21, 22:1, 33:5
**repatriated** [3] - 7:16, 31:16, 45:10
**repatriating** [1] - 33:1
**repatriation** [2] - 33:25, 34:1
**repeat** [1] - 15:19
**repeated** [1] - 6:10
**reply** [1] - 3:6
**report** [10] - 7:8, 13:20, 37:18, 38:14, 38:16, 39:2, 40:21, 49:19, 49:22, 49:24
**reported** [1] - 1:24
**reporter** [1] - 47:21
**Reporter** [3] - 1:21, 1:22, 52:2
**reports** [11] - 8:6, 8:7, 17:17, 19:23, 20:9, 23:14, 23:19, 23:20, 24:3, 37:19, 37:22
**representation** [1] - 19:3
**representations** [2] - 34:25, 39:2
**representatives** [2] - 24:10, 49:17
**request** [2] - 3:25, 47:9
**requested** [2] - 30:19
**require** [4] - 4:21, 4:24, 7:8, 24:16
**requirement** [1] - 6:12
**requires** [3] - 13:21, 18:24, 23:13
**requiring** [2] - 29:12, 30:15
**reserved** [1] - 23:14
**resolution** [6] - 6:8, 34:4, 36:1, 37:8
**resolved** [2] - 7:10, 35:8
**resources** [8] - 10:13, 22:20, 32:6, 33:3, 33:6, 43:21, 43:22
**respect** [6] - 11:5, 13:24, 23:2, 33:7, 45:4, 46:25
**respond** [2] - 8:20, 48:3
**response** [7] - 4:11, 40:17, 44:16, 44:23, 44:24, 48:4
**responses** [1] - 2:18
**responsibilities** [1] - 19:11
**responsibility** [1] - 31:15
**rest** [1] - 39:22
**resulted** [1] - 35:11

**return** [9] - 4:16, 7:5, 8:3, 8:9, 11:22, 12:11, 13:11, 13:12, 30:19
**returned** [9] - 7:16, 11:24, 12:23, 12:25, 20:1, 32:25, 45:2, 45:9, 45:14
**returning** [2] - 8:8, 38:13
**revealed** [2] - 5:4, 5:20
**revelation** [1] - 5:17
**review** [8] - 9:19, 10:11, 10:16, 10:22, 10:25, 14:10, 14:11, 35:15
**reviewed** [3] - 9:8, 11:2, 14:7
**reviewing** [1] - 4:10
**revised** [2] - 41:1, 50:2
**rights** [1] - 19:22
**robust** [1] - 14:12
**Room** [1] - 1:22
**route** [1] - 20:22
**RPR** [1] - 1:21
**Rule** [1] - 27:10
**rules** [1] - 27:17
**Rumsfeld** [1] - 2:5
**run** [2] - 46:10, 47:16

**S**

**sad** [1] - 28:4
**sanction** [1] - 22:8
**sanctions** [1] - 16:24
**saving** [1] - 32:6
**schedule** [3] - 13:16, 34:2, 39:8
**scheduled** [2] - 2:22, 6:17
**scheduling** [1] - 8:10
**school** [1] - 46:13
**scrutinize** [1] - 19:23
**sealed** [6] - 45:24, 46:1, 46:9, 46:15, 46:20, 46:23
**sealing** [2] - 46:11, 47:8
**SEAN** [1] - 1:17
**Sean** [1] - 2:11
**seated** [2] - 2:2, 44:7
**second** [1] - 34:5
**Secondly** [1] - 26:15
**secondly** [1] - 27:5
**security** [1] - 16:4
**see** [13] - 8:7, 13:11, 17:8, 20:8, 25:3, 33:14, 34:19, 36:1, 39:19, 44:11, 44:13,
48:13
**seeing** [1] - 42:23
**send** [2] - 10:7, 21:21
**sense** [8] - 10:12, 16:1, 23:16, 25:20, 28:24, 40:21, 43:2, 49:20
**sensitive** [3] - 17:20, 47:11, 47:12
**sentiment** [1] - 32:19
**September** [1] - 4:23
**sequester** [3] - 3:20, 29:10, 30:20
**sequestered** [1] - 27:7
**serious** [4] - 8:2, 10:22, 41:11, 48:23
**seriously** [3] - 10:22, 48:22, 50:1
**set** [4] - 9:7, 22:2, 34:10, 39:10
**setting** [1] - 36:22
**seven** [4] - 7:3, 7:21, 9:1, 10:8, 20:15, 21:25, 23:1, 38:11
**Shaffer** [1] - 1:13
**shake** [1] - 20:13
**share** [2] - 4:3, 4:9
**shared** [1] - 28:25
**short** [5] - 27:25, 40:12, 40:16, 43:11, 46:12
**shorthand** [1] - 1:24
**shot** [1] - 44:1
**show** [4] - 3:2, 4:11, 5:14, 6:11
**sick** [2] - 19:18
**side** [1] - 35:16
**sight** [1] - 18:16
**sign** [1] - 44:19
**significant** [8] - 5:12, 5:16, 7:10, 10:13, 16:24, 41:15, 43:12, 43:21
**similar** [2] - 3:17, 3:22
**simple** [1] - 11:13
**simply** [3] - 10:20, 11:13, 13:14
**sit** [5] - 17:22, 18:14, 19:23, 21:22, 34:18
**sitting** [2] - 36:4, 49:16
**situation** [3] - 11:12, 13:21, 14:8
**sleep** [1] - 31:14
**slightly** [1] - 16:1
**slowly** [1] - 19:25
**smoking** [1] - 43:6
**snag** [1] - 32:12
**snail's** [1] - 32:12
**solution** [2] - 21:13,
23:13
**someone** [5] - 11:14, 36:17, 37:25, 38:21, 45:12
**somewhere** [1] - 20:1
**soon** [1] - 9:12
**sought** [2] - 3:19, 29:9
**sound** [1] - 38:6
**sounds** [1] - 38:5
**South** [1] - 1:14
**span** [1] - 8:2
**spark** [1] - 9:15
**speaking** [2] - 20:24, 46:13
**speaks** [1] - 25:23
**speedy** [1] - 38:20
**spelled** [1] - 30:12
**spent** [2] - 10:13, 22:2
**spoken** [1] - 14:15
**springs** [1] - 20:1
**staff** [3] - 10:19, 15:2, 31:20
**staffed** [1] - 15:3
**staffing** [1] - 30:7
**stakes** [1] - 6:3
**stand** [1] - 44:3
**stands** [2] - 33:11, 44:4
**start** [4] - 22:9, 22:10, 22:11
**started** [1] - 36:6
**State** [9] - 11:17, 15:9, 24:11, 24:15, 33:4, 33:11, 38:23, 49:17, 49:20
**state** [1] - 7:5
**statement** [1] - 43:24
**STATES** [2] - 1:1, 1:10
**States** [19] - 1:18, 6:14, 6:25, 7:15, 8:14, 9:3, 11:6, 12:10, 12:17, 14:16, 16:5, 16:25, 19:11, 21:25, 25:8, 25:16, 29:13, 33:4, 36:8
**States'** [2] - 11:11, 29:7
**status** [20] - 7:8, 8:6, 8:7, 13:20, 17:17, 23:13, 23:19, 23:20, 23:25, 24:3, 37:18, 37:19, 37:22, 38:14, 38:16, 40:21, 49:19, 49:22, 49:24
**STATUS** [1] - 1:9
**stay** [15] - 2:20, 2:23, 6:16, 8:19, 8:22, 11:21, 23:11, 23:18, 32:3, 35:12, 36:10, 37:5, 40:11, 48:17,
50:12
**stayed** [1] - 17:7
**staying** [2] - 17:7, 49:3
**steps** [1] - 22:22
**stick** [1] - 21:15
**still** [5] - 8:3, 14:2, 32:10, 38:1, 50:10
**Still** [2] - 14:5, 14:6
**story** [1] - 8:16
**Street** [1] - 1:14
**strikes** [1] - 18:7
**subject** [3] - 38:13, 39:24, 48:17
**submission** [3] - 44:25, 45:19, 47:10
**submit** [6] - 25:6, 31:6, 49:4, 50:2, 50:8, 50:14
**submitted** [2] - 32:3, 32:4
**subsequent** [1] - 43:12
**subsequently** [2] - 28:7, 45:13
**Subsequently** [1] - 30:16
**substantial** [1] - 33:21
**subsumed** [1] - 42:18
**sudden** [2] - 10:7, 18:8, 18:11
**sufficient** [1] - 15:22
**suggest** [2] - 20:3, 39:9
**suggested** [3] - 33:17, 37:17, 49:16
**suggesting** [5] - 14:18, 21:17, 21:18, 40:20
**suggestion** [3] - 7:20, 33:15, 35:16
**Suite** [2] - 1:14, 1:19
**Sullivan** [1] - 30:21
**SULLIVAN** [4] - 1:9, 1:21, 52:2, 52:5
**Sullivan's** [1] - 28:5
**summary** [1] - 40:22
**supplement** [1] - 25:8
**supplemental** [2] - 3:1, 3:7
**support** [2] - 3:6, 15:23
**suppose** [1] - 14:20
**supposed** [1] - 18:11
**Supreme** [1] - 14:13
**surely** [1] - 19:25
**surfaced** [2] - 40:1, 41:12
**surprised** [1] - 35:23
**surrounding** [1] - 44:20
**suspicious** [2] - 18:7
**sustain** [1] - 18:10
**system** [3] - 8:17, 10:21, 11:11
**systems** [1] - 16:14

**T**

**table** [3] - 2:11, 18:14, 29:25
**tea** [1] - 17:22
**team** [1] - 35:15
**ten** [2] - 44:2, 47:22
**ten-minute** [1] - 44:2
**tending** [2] - 4:15, 4:18
**term** [2] - 42:2, 49:5
**terms** [3] - 37:18, 39:25, 49:2
**testimony** [1] - 41:7
**thankful** [1] - 36:15
**THE** [132] - 1:1, 1:9, 2:10, 2:13, 2:17, 8:25, 9:11, 9:13, 9:22, 11:20, 12:2, 12:8, 12:14, 12:16, 12:20, 14:2, 14:6, 14:9, 14:17, 15:12, 15:16, 15:21, 16:8, 16:11, 16:15, 16:21, 17:5, 17:13, 17:16, 17:21, 18:6, 18:19, 18:22, 18:25, 19:4, 19:7, 19:18, 20:7, 20:14, 20:20, 21:4, 21:11, 21:17, 22:15, 22:24, 23:4, 23:7, 23:22, 24:14, 24:21, 24:23, 25:3, 25:7, 25:13, 25:16, 25:22, 26:2, 26:5, 26:10, 26:14, 26:20, 27:2, 27:14, 27:18, 27:23, 28:4, 28:14, 28:17, 28:19, 28:21, 29:1, 29:7, 29:16, 29:21, 29:25, 30:4, 30:12, 31:1, 31:4, 31:7, 31:9, 32:8, 34:5, 34:7, 34:12, 34:16, 34:22, 35:18, 36:4, 36:12, 36:16, 37:6, 37:14, 37:19, 37:21, 38:5, 38:10, 38:15, 39:6, 39:12, 39:15, 39:21, 40:8, 40:12, 40:16, 41:3, 41:10, 41:20, 42:4, 42:6, 42:12, 42:20, 43:5,

43:9, 44:2, 44:10,
46:13, 46:18, 46:24,
47:6, 47:11, 47:16,
47:24, 48:2, 48:19,
49:7, 49:11, 50:1,
50:7, 50:9, 50:15,
50:19
**themselves** [1] - 11:16
**Thereafter** [1] - 30:18
**thereafter** [1] - 7:9
**therefore** [3] - 4:21,
7:8, 26:5
**thinking** [4] - 32:17,
33:15, 33:23, 36:6
**thinks** [2] - 29:15,
49:24
**thirty** [2] - 20:10,
49:23
**Thirty** [1] - 37:15
**threw** [1] - 35:6
**timely** [4] - 10:4,
12:18, 12:21, 37:9
**timing** [2] - 12:16,
31:9
**tireless** [1] - 6:6
**today** [8] - 2:23, 29:22,
35:12, 35:15, 37:23,
44:14, 45:19, 48:2
**token** [1] - 13:13
**tolerate** [4] - 8:13,
10:6, 13:14, 13:15
**tolerated** [1] - 6:5
**took** [7] - 3:18, 4:25,
9:4, 18:9, 35:10,
35:11, 43:12
**top** [2] - 22:10, 22:12
**totally** [1] - 12:8
**towards** [2] - 15:7,
22:23
**track** [1] - 16:16
**TRANSCRIPT** [1] - 1:9
**transcript** [5] - 1:24,
4:12, 47:21, 49:4,
52:3
**transcription** [1] -
1:25
**transfer** [7] - 2:21,
6:20, 6:22, 7:2, 9:9,
11:7, 15:9
**transferred** [3] - 12:7,
16:5, 18:19
**transfers** [1] - 13:24
**travesty** [1] - 8:15
**treatment** [2] - 19:20,
19:21
**tremendous** [1] - 7:11
**trial** [6] - 9:15, 12:22,
18:8, 22:2, 24:7,
38:20

**trouble** [1] - 46:18
**troubling** [1] - 41:3
**truly** [1] - 28:1
**Trust** [1] - 13:6
**trust** [2] - 13:6, 13:7
**truthful** [1] - 6:15
**try** [2] - 17:22, 23:6
**trying** [9] - 9:22,
10:20, 17:20, 23:5,
34:16, 34:17, 36:10,
46:18, 47:16
**Tuesday** [2] - 44:23,
44:25
**turned** [2] - 26:6,
27:11
**Two** [2] - 47:24, 48:2
**two** [9] - 9:19, 18:8,
19:24, 20:9, 20:13,
38:17, 42:6, 46:12
**type** [3] - 23:23, 43:3,
43:22
**typing** [1] - 37:24

# U

**U.S** [1] - 1:22
**unclassified** [1] - 46:1
**unclassify** [1] - 46:14
**unconscionable** [1] -
26:17
**under** [4] - 6:1, 15:17,
41:2, 44:19
**undermine** [2] - 4:16,
4:18
**undermines** [1] - 26:2
**Undermines** [1] - 43:9
**understood** [1] -
15:20
**Understood** [6] - 9:2,
22:13, 24:8, 30:25,
43:8, 47:15
**undertaken** [1] - 17:15
**undertakes** [1] - 17:19
**undertaking** [1] - 9:5
**unduly** [1] - 49:22
**Unfortunately** [2] -
13:7, 19:2
**UNITED** [2] - 1:1, 1:10
**United** [21] - 1:18,
6:14, 6:25, 7:15,
8:14, 9:3, 11:6,
11:11, 12:10, 12:16,
14:16, 16:5, 16:25,
19:11, 21:25, 25:7,
25:16, 29:7, 29:13,
33:3, 36:8
**unjust** [1] - 6:4
**unnecessary** [1] -
22:19

**unravel** [2] - 20:23,
21:23
**unravels** [1] - 12:16
**unsealed** [1] - 46:21
**unwind** [2] - 31:12,
36:20
**unwinding** [1] - 19:25
**unwinds** [1] - 10:7
**up** [16] - 8:15, 8:21,
9:7, 10:6, 11:13,
12:9, 13:8, 13:9,
14:6, 16:25, 23:23,
31:13, 40:23, 43:12,
43:17, 45:3
**upset** [3] - 24:23,
34:16, 48:8

# V

**various** [2] - 11:16,
11:17
**veracity** [1] - 25:25
**versus** [1] - 2:4
**veterans** [1] - 48:23
**view** [4] - 2:20, 6:17,
42:14, 45:8
**violating** [1] - 3:4
**voice** [1] - 35:19

# W

**wait** [1] - 21:22
**Wait** [1] - 25:16
**walk** [2] - 11:14, 20:25
**wall** [2] - 17:8, 45:12
**wants** [11] - 7:4, 8:20,
10:23, 10:24, 16:16,
19:13, 20:23, 21:21,
21:25, 22:16, 27:7
**WARDEN** [102] - 1:17,
2:8, 2:11, 8:21, 9:2,
9:12, 9:17, 10:9,
12:1, 12:3, 12:13,
12:15, 12:19, 13:19,
14:5, 14:7, 14:11,
15:1, 15:14, 15:19,
15:25, 16:9, 16:13,
16:19, 17:2, 17:11,
17:14, 17:17, 18:3,
18:17, 18:21, 18:23,
19:2, 19:6, 19:15,
20:3, 20:10, 20:17,
20:21, 21:10, 21:12,
22:13, 22:16, 23:2,
23:5, 23:11, 24:8,
24:20, 24:22, 24:24,
25:5, 25:11, 25:15,
25:19, 26:1, 26:4,

26:6, 26:13, 26:18,
26:23, 27:9, 27:16,
27:20, 27:25, 28:9,
28:16, 28:18, 28:20,
28:23, 29:5, 29:15,
29:20, 29:23, 30:2,
30:5, 30:25, 31:3,
31:6, 31:8, 40:15,
40:19, 41:9, 41:17,
41:25, 42:5, 42:7,
42:15, 42:22, 43:8,
43:10, 46:7, 46:15,
46:23, 47:5, 47:7,
47:15, 47:20, 48:1,
49:10, 49:13, 50:8,
50:14
**Warden** [4] - 2:9, 2:10,
37:1, 40:13
**Washington** [3] - 1:6,
1:20, 1:23
**watched** [2] - 32:14,
32:15
**Weavers** [1] - 14:2
**Wednesday** [1] - 1:6
**week** [4] - 31:8, 45:19,
49:21, 50:14
**weeks** [5] - 20:9,
37:23, 47:24, 48:2,
49:23
**well-staffed** [1] - 15:3
**whatsoever** [4] - 6:14,
19:22, 25:24, 27:4
**whim** [2] - 16:25, 36:7
**whole** [1] - 39:19
**William** [1] - 2:15
**WILLIAM** [1] - 1:13
**willing** [1] - 37:14
**win** [1] - 19:8
**withdraw** [1] - 7:1
**witness** [11] - 4:5,
4:19, 5:6, 25:20,
26:8, 28:12, 42:1,
42:5, 42:9, 42:11,
42:25
**witness'** [1] - 42:19
**witnesses** [3] - 3:13,
41:24, 43:16
**WITNESSES** [1] - 51:3
**wonderful** [1] - 50:15
**word** [2] - 5:24, 42:3
**words** [6] - 3:20, 5:18,
7:7, 27:7, 30:20,
45:11
**worry** [1] - 31:15
**writing** [1] - 25:6
**writs** [1] - 32:17

# Y

**year** [3] - 9:5, 13:5,
19:5
**years** [16] - 7:3, 7:21,
8:2, 8:16, 9:1, 10:8,
15:10, 15:13, 17:21,
19:14, 20:15, 21:25,
23:1, 32:14, 32:22,
38:11
**yourselves** [1] - 2:6